**MANATT, PHELPS & PHILLIPS, LLP**
BRANDON P. REILLY (Bar No. CA 278012)
BReilly@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: 916.552.2300
Facsimile: 916.552.2323

EMILY V. WHITELY (*Pro Hac Vice* Pending)
EWhitely@manatt.com
7 Times Square
New York, NY 10036
Telephone: 212.790.4500

*Attorneys for Defendant*
ANSCHUTZ ENTERTAINMENT GROUP, INC, d/b/a
WWW.SHRINEAUDITITORIUM.COM

**UNITED STATES DISCTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SILVIA GARCIA,

Plaintiff,

v.

ANSCHUTZ ENTERTAINMENT GROUP, INC., a Colorado corporation, d/b/a WWW.SHRINEAUDITORIUM.COM,

Defendant.

Case No.: 5:25-cv-2282

Assigned to Hon. Sunshine S. Sykes

**DEFENDANT ANSCHUTZ ENTERTAINMENT GROUP'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Filed concurrently with Request for Judicial Notice; Declaration of Brandon P. Reilly; and [Proposed] Order

| | |
|---|---|
| Date: | March 6, 2026 |
| Time: | 2:00 p.m. |
| Courtroom: | 2 |

| | |
|---|---|
| Complaint Filed: | September 2, 2025 |
| Trial Date | None Set |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, March 6, 2026 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2, 2nd Floor, located in the George E. Brown, Jr. Federal Building and United States Courthouse, 3470 Twelfth Street Riverside, California 92501, the Honorable Sunshine S. Sykes presiding, Defendant Anschutz Entertainment Group, Inc. d/b/a www.shrineauditorium.com ("Defendant"), will and hereby does move to dismiss Plaintiff Silvia Garcia's ("Plaintiff") complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This Motion is made on the grounds that Plaintiff failed to state a claim as a matter of law for violations of the Electronic Communications Privacy Act (the "Wiretap Act"), 18 U.S.C. § 2511 *et seq.*; violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51; and intrusion upon seclusion under common law. Plaintiff's claims fail because she failed to plausibly allege that Defendant violated her rights to privacy.

Further, Plaintiff lacks standing to bring these claims because she failed to plausibly allege that she suffered damages of any kind.

The motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; Request for Judicial Notice; Declaration of Brandon P. Reilly; all pleadings, records, and files in this action; any evidence or argument presented at the hearing; and any and all papers on file with the Court.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place initially on January 7, 2026.

Dated: January 16, 2026

MANATT, PHELPS & PHILLIPS, LLP

By: s/ Brandon P. Reilly
Brandon P. Reilly
Emily V. Whitely
Attorneys for Defendant, Anschutz Entertainment Group, Inc.

## TABLE OF CONTENTS

Page


MEMORANDUM OF POINTS AND AUTHORITIES ........ 8
INTRODUCTION ........ 8
BACKGROUND ........ 9
I. LEGISLATIVE HISTORY ........ 9
II. SUMMARY OF ALLEGATIONS ........ 12
LEGAL STANDARD ........ 13
ARGUMENT ........ 14
I. PLAINTIFF LACKS ARTICLE III STANDING. ........ 14
II. THE COMPLAINT FAILS TO STATE A CLAIM. ........ 17
A. Plaintiff's Wiretap Act Claim Fails. ........ 17
1. Plaintiff's claims fall squarely within the one-party consent rule. ........ 17
2. Plaintiff does not sufficiently allege the crime-tort exception. ........ 18
3. Plaintiff does not allege "interception in transit." ........ 19
B. Plaintiff's CIPA Section 638 Claim Fails. ........ 20
1. As alleged, the Magnite Pixel captures content of communications. ........ 21
2. Alternatively, Plaintiff consented to Defendant's alleged data practices. ........ 23
3. To the extent the Court finds CIPA to be ambiguous, the rule of lenity applies to resolve them narrowly. ........ 25
C. Plaintiff's Intrusion Upon Seclusion Claim Fails. ........ 26
1. Plaintiff fails to assert a reasonable expectation of privacy. ........ 27
2. Plaintiff does not allege a "highly offensive" intrusion. ........ 28
CONCLUSION ........ 29

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 14

*Bittner v. United States*,
598 U.S. 85 (2023) .......... 25

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-CV-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) . 16, 26

*Cahill v. Liberty Mutual Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) .......... 14

*Carolus v. Nexstar Media Inc.*,
No. 24-CV-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .......... 16

*D'Angelo v. Penny OpCo, LLC*,
No. 23-CV-0981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023)..... 27

*Doe v. Eating Recovery Ctr.*,
No. 23-CV-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)........ 25, 26

*Doe v. Talkiatry Mgmt. Servs., LLC*,
No. 5:25-CV-00781-SSS-DTBX, 2025 WL 3190813 (C.D. Cal. Oct. 1, 2025) (Sykes, J.) .......... 18

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 26

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 9

*Greenley v. Kochava, Inc.* .......... 21, 22

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .......... 22, 28

*Harrott v. Cnty. of Kings*,
25 Cal.4th 1138 (2001) .......... 25

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 21

*Hernandez-Silva v. Instructure, Inc.*,
No. 2:25-CV-02711-SB-MAA, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) .......... 21, 27, 28

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Hill v. NCAA*,
7 Cal. 4th 1 (1994) .... 26

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .... 21

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .... 22

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022) .... 22

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .... 14

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .... 19

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .... 15

*Khamooshi v. POLITICO LLC*,
No. 24-CV-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .... 15, 16

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .... 14

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) .... 15, 21

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .... 19

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .... 19, 23

*Lightoller v. Jetblue Airways Corp.*,
No. 23-CV-00361-H-KSC, 2023 WL 396382 (S.D. Cal. June 12, 2023) .... 15

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .... 17

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .... 28

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .... 14

## TABLE OF AUTHORITIES
(continued)

**Page**

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 21

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 15

*Mitchener v. CuriosityStream, Inc.*,
No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .21, 22, 23

*Moss v. ResortPass Inc*,
2025 WL 3452360 (Cal. Super. Oct. 30, 2025) .......... 25

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .......... 14

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .......... 19

*People v. Reynoza*,
15 Cal.5th 982 (2024) .......... 25

*People v. Suite*,
101 Cal. App. 3d 680 (Cal. Ct. App. 1980) .......... 22

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 15, 16,

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Cal.Super. Apr. 1, 2025) .......... 22

*Rodriguez v. Brushfire Recs.*,
2:25-CV-09797-CAS-PDX, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025)16, 17, 29

*Rodriguez v. Ink America Int'l Group LLC*,
No. 25STCV15350, slip op. (Cal. Super. Dec. 10, 2025) .......... 26

*Roe v. Amgen*,
No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 17, 19

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 18

*Saeedy v. Microsoft Corp.*,
No. 23-CV-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .......... 28

## TABLE OF AUTHORITIES
(continued)

**Page**

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 14

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 27

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 14, 15

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 14

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014) .......... 19

*Sussman v. AM. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 18

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012 DMS, 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd*,
2025 WL 1704437 (9th Cir. June 18, 2025) .......... 27, 28, 29

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 15

*Washington v. Flixbus, Inc.*,
No. 3:25-CV-00212-H-MSB, 2025 WL 1592961 (S.D. Cal. June 5, 2025) 23, 24

## STATUTES & RULES

11 CCR §§ 7000-7600 .......... 10, 11

18 U.S.C. 2511 .......... 8, 13, 17, 18

Cal. Civ. Code § 1798.100, *et seq.* .......... 10, 11

Cal. Pen. Code § 631(a) .......... 10, 21

Cal. Pen. Code § 638 .......... passim

Fed. R. Civ. P. 12(b)(1) .......... 13, 14, 15, 17

Fed. R. Civ. P. (b)(6) .......... 14

Fed. R. of Evid. 201 .......... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff's complaint (the "Complaint") against Anschutz Entertainment Group, Inc. ("AEG" or "Defendant") cannot establish Article III standing or state a viable claim under any theory pled. Although California Invasion of Privacy Act ("CIPA") cases involving website tracking technologies are abundant—and some allege particularly sensitive data—this case is not one of them: Plaintiff's allegations center on a single, self-initiated visit to a commercial website for a live music venue. Plaintiff's interaction, by her own admission, occurred in part because she is a "tester" seeking to manufacture litigation. (Compl. ¶ 15). From this solitary visit, Plaintiff attempts to transform routine, disclosed data practices into alleged "wiretapping," criminal surveillance, and egregious privacy violations. The law does not support such a result.

First, Plaintiff alleges no concrete injury. She does not identify any sensitive or private information collected from her, relying instead on generalized descriptions of device data such as "HTTP requests, URLs visited, and other metadata." (Compl. ¶ 35). The website at issue does not involve sensitive datasets such as healthcare or financial services; it is the website for a live music venue. The Ninth Circuit and district courts have repeatedly held that such routine information does not implicate a legally protectable privacy interest and cannot confer standing.

Second, even if Plaintiff could establish standing (she cannot), her claims fail as a matter of law. The Federal Electronic Communications Privacy Act (also known as the "Wiretap Act") claim collapses under the one-party consent rule, which bars liability where, as here, the alleged interceptor was a party to the communication. 18 U.S.C. § 2511(2)(d). Her fallback reliance on the crime-tort exception is equally unavailing: Plaintiff pleads no facts showing any criminal or tortious purpose beyond vague assertions of financial motivation—an argument courts have squarely rejected.



MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Nor does Plaintiff allege contemporaneous interception "in transit," as required by the statute.

Plaintiff's CIPA Section 638.51 claim—a criminal statute—fares no better. By definition, the technology at issue cannot constitute a "trap and trace device" under Section 638.51 because Plaintiff alleges that the so-called device collects the "contents of communications"—a category expressly excluded from the statute's scope. Cal. Penal Code § 638.50(c). The rule of lenity further compels dismissal, as courts have cautioned against stretching the language of a criminal statute passed in 1967 (CIPA) to cover modern website analytics. In any event, Plaintiff consented to the challenged practices through Defendant's cookie banner and Privacy Policy, which clearly disclosed the practices and provided opt-out functionality—disclosures courts have repeatedly deemed sufficient to establish consent.

Finally, Plaintiff's intrusion upon seclusion claim fails because she cannot plead either element: a reasonable expectation of privacy or a "highly offensive" intrusion. Courts uniformly hold that voluntary interaction with a commercial website does not create a reasonable expectation of privacy, and Plaintiff's reliance on generic allegations of "dishonesty" and "deception" falls far short of the egregious conduct required to sustain this claim.

In short, Plaintiff's Complaint is long on rhetoric but devoid of facts or law that could support relief. For these reasons, and as set forth below, the Court should dismiss all claims with prejudice.

## BACKGROUND

### I. LEGISLATIVE HISTORY

CIPA § 630 et seq. ("CIPA"), was enacted in 1967. The Wiretap Act was passed in 1968. As explained by the California Supreme Court, CIPA was enacted to "replac[e] prior laws that permitted the recording of telephone conversations with the consent of one party to the conversation." *Flanagan v. Flanagan*, 27 Cal. 4th 766,

768-69 (2002).

CIPA was amended well into the Internet Era, yet does not mention the Internet. In 2015, AB 929 (Chau) amended CIPA to encompass pen registers and trap and trace devices. *See* A.B. 929, 2015-2016 Reg. Sess. (Cal. 2015). However, like the 1967 version, the 2015 amendment to CIPA did not contain the words “Internet,” “website,” “cookies,” “pixels,” or “advertising,” despite the widespread use of Internet websites and tracking technologies when the bill was passed. Rather, the focus remained on telephones and other person-to-person communications. *See, e.g.,* Cal. Pen. Code § 631(a) (referring to “telegraph or telephone wire, line, cable, or instrument” and “internal telephone communication system”); § 631(b) (referring to a “public utility,” “telephone company,” and “telephonic communication systems”); § 632 (referring to a “telegraph, telephone, or other device.”). As stated by the bill’s sponsor, Assemblymember Chau, “pen registers/trap and trace devices are used by law enforcement for telephone surveillance to record incoming and outgoing phone numbers from a tapped line” and “[a] pen/trap order is only for the capture of incoming and outgoing phone numbers.” *See* AB 929, Bill Analysis (April 21, 2015) at 10–11.

While CIPA does not address websites or third-party tracking technologies, California has a comprehensive privacy law that does: The California Consumer Privacy Act of 2018, Cal. Civ. Code § 1798.100 *et seq.*, including as amended by the California Privacy Rights Act of 2020 and its implementing regulations, 11 CCR §§ 7000-7600 (the “CCPA Regulations,” and collectively, the “CCPA”). Altogether, the CCPA’s text contains the word “Internet” 35 times, “website” 46 times, and “advertising” 30 times. *See id.* The CCPA regulates the use of online tracking technologies of the type alleged by Plaintiff by, among other things, requiring websites to (i) disclose whether the business shares personal information for cross-

context behavioral advertising;[1] (ii) disclose categories of third-parties to whom the business discloses personal information (Cal. Civ. Code § 1798.110(c)(4); 11 CCR §§ 7010-7012); (iii) offer a link allowing the website visitor to opt-out of such sharing (*id.* at §§ 1798.120, 1798.135; 11 CCR §§ 7026); (iv) respond to website visitors' browser signals that can automatically and instantly communicate such opt-out requests (*id.* at § 1798.135(b); 11 CCR § 7025); (v) request a report on all such sharing (*id.* at §§ 1798.115(a)-(b); 11 CCR § 7024); (vi) request the deletion of all personal information maintained by the business (*id.* at §§ 1798.105, 1798.130; 11 CCR § 7022); and (vii) enter contracts with all third-parties and service providers with which personal information is shared (*id.* at §§ 1798.100(d), 1798.140(ag)(1); 11 CCR §§ 7050-7053).

Last year, the California Senate unanimously voted to amend CIPA to clarify that the statute is not intended to apply to business and commercial services. *See* SB 690, 2025-26 Regulatory Session (March 24, 2025) (CIPA's private right of action "does not apply to the processing of personal information for a commercial purpose"). The Senate Public Safety Committee's analysis noted that CIPA was "never intended to apply" to "website analytics or online advertising," which is already governed by the . . . CCPA." SB 690 Analysis, Cal. Senate Pub. Safety Comm., 2025-26 Regulatory Session (April 25, 2025).[2]

---

[1] "Cross-context behavioral advertising" means "the targeting of advertising to a consumer based on the consumer's personal information obtained from the consumer's activity across businesses, distinctly branded internet websites, applications, or services, other than the business, distinctly branded internet website, application, or service with which the consumer intentionally interacts." Cal. Civ. Code § 1798.140(k); §§ 1798.115(c), 1798.130(a); 11 CCR § 7013.

[2] In a related development, on October 8, 2025, California Governor Gavin Newsom signed the California Opt Me Out Act (AB 566, Lowenthal), which will require all website browsers to offer consumers a simple, built-in opt-out signal. This mechanism will allow for immediate opt-outs of third-party website tracking for targeted advertising and other purposes. (*See* AB 566 (enrolled Sept. 15, 2025) (adding Cal. Civ. Code § 1798.136).)

## II. SUMMARY OF ALLEGATIONS

AEG is a global live entertainment company that owns and operates venues, promotes concerts, and produces events across the world. As part of its portfolio, AEG, through its subsidiary, operates the Shrine Auditorium in Los Angeles ("Shrine"), and owns and manages the official website, www.shrineauditorium.com (the "Website"). The Website serves as the primary digital platform for Shrine, allowing users to view upcoming events, link to the venue's ticketing platform, access venue information such as seating charts and parking details, and learn about Shrine's history and amenities.

Plaintiff alleges that she visited the Website "in the last year," both as a consumer interested in Shrine's goods and services and because she is a "consumer privacy advocate who works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law." (Compl. ¶ 15). Plaintiff alleges that AEG partnered with Magnite, a data broker, to install a "secret" Magnite Tracking Pixel (the "Magnite Pixel") on the Website. (*Id*. ¶ 3). She claims the Magnite Pixel was used to "surveil visitors and monetize personal information." (*Id*. ¶ 15).

Plaintiff further alleges that the Magnite Pixel employs "fingerprinting" operations to collect data from Website visitors and match it with Magnite's existing data, thereby creating detailed user profiles. (*Id*. ¶¶ 11–13). She asserts that during her visit, she "conducted a search" on the Website, and the Magnite Pixel collected her information–including "HTTPs requests, URLs visited, and other metadata"–without her knowledge. (*Id*. ¶¶ 15, 35).

While Plaintiff acknowledges reviewing Defendant's Privacy Policy (the "Privacy Policy"), which is applicable to the Website, she contends that Defendant's representations were deceptive. (*Id*. ¶¶ 1, 24). Specifically, Plaintiff claims that Defendant's Privacy Policy, which states that "[AEG] takes your privacy seriously," failed to disclose the use of the Magnite Pixel. (*Id*.) Plaintiff alleges that this constitutes a "bait and switch" scheme, where Defendant allegedly "lured" visitors with promises

of privacy but secretly enabled the collection of personal information for profit. (*Id.* ¶¶ 1, 24, 32). However, Plaintiff notably leaves out the explicit disclosures in Defendant's Privacy Policy describing the use of these technologies, as explained in Section II.B.2 *infra* (Reilly Decl. ¶ 2; *see* Compl. ¶ 16). Plaintiff also only vaguely references the Website's opt-out cookie banner, which notified visitors of these technologies and offered a choice to decline consent. (Compl. ¶ 16).

The Complaint further claims that the Magnite Pixel is a "trap and trace device" under California law, alleging that it captures routing and addressing information—such as IP addresses, device identifiers, and session data—that can identify the source of electronic communications. (Compl. ¶¶ 17–23). Plaintiff alleges that Defendant did not obtain her consent to install or use such tracking technology. (*Id.* ¶ 22).

Plaintiff also asserts that Defendant's conduct is highly offensive to a reasonable person for several reasons: it breaches trust and expectations, involves deception, occurs in a private and sensitive setting, enables unwanted third-party surveillance, and violates established privacy norms. (*Id.* ¶¶ 24–25). Plaintiff devotes much of the Complaint to potential harms such as identity theft, targeted harassment, and manipulative advertising, particularly when sensitive information is sold to data brokers. (*Id.* ¶¶ 24–32).

Based on these allegations, Plaintiff asserts the following causes of action: (1) Violations of the Federal Wiretap Act, 18 U.S.C.  2511, *et seq.* (the "Wiretap Act"); (2) Violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code Section 638.51; and (3) intrusion upon seclusion under California common law. Plaintiff seeks "actual and statutory damages," attorneys' fees and costs, and injunctive relief. (Compl., *Prayer for Relief*).

## **LEGAL STANDARD**

A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds for federal subject matter jurisdiction. If the plaintiff lacks standing under Article III

of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 952 (S.D. Cal. 2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998)). A jurisdictional challenge under Rule 12(b)(1) may be facial or factual. *Id.* (*citing Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). Where, as here, the attack is facial, "the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction." *Id.*

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. *Id.* at 952–53 (*citing Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001)). This Court must accept factual allegations as true and must draw reasonable inferences from them in favor of the nonmoving party. *Id.* (*citing Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996)). However, this Court is not required to accept "legal conclusions" as true. *Id.* (*citing Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). While "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)," there are two exceptions: "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## ARGUMENT

### I. PLAINTIFF LACKS ARTICLE III STANDING.

To establish Article III standing, a plaintiff must allege an injury in fact that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). For an injury to be particularized, it "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). A statutory violation, standing alone, does

not suffice; "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

Following *TransUnion*, Ninth Circuit courts have dismissed privacy suits where, as is the case here, plaintiffs allege only abstract statutory violations without real-world harm. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 794–95 (9th Cir. 2025) (affirming dismissal of wiretapping claim under Rule 12(b)(1)); *Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 396382, at *3 (S.D. Cal. June 12, 2023) ("a bare CIPA violation by itself is insufficient to demonstrate Article III injury"); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *3–*4 (N.D. Cal. June 24, 2025) (general allegations of interception insufficient); *Khamooshi v. POLITICO LLC*, No. 24-CV-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (routine website tracking data did not constitute a concrete injury).

Plaintiff fails to allege facts that she "stated a legally protectable privacy interest based on the nature of the information at issue." *See Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014)). The Ninth Circuit recently affirmed dismissal for lack of Article III standing where information concerning a plaintiff's online interactions with a pet supply store website—"over 30 different categories of information"—contained "no embarrassing, invasive, or otherwise private information" collected by the third party, likening the interaction "to a store clerk's observing shoppers." 153 F.4th at 786, 791. This type of information is thus distinguishable from a legally protected privacy interest that confers standing. *Rodriguez v. Brushfire Recs.*, No. 2:25-CV-09797-CAS-PDX, 2025 WL 3692144, at *6 (C.D. Cal. Dec. 15, 2025) (following *Popa* and granting dismissal).

Here, Plaintiff's allegations are even weaker. She claims only a single visit to

the Website and fails to identify any specific information allegedly collected during that visit. (Compl. ¶ 15). Although the Complaint recites generalized descriptions of data the Magnite Pixel *could* collect, the only real reference to Plaintiff's own information consists of "HTTP requests, URLs visited, and other metadata." (*Id*. ¶ 35). Such information does not establish a concrete, particularized injury. *See Brushfire Recs.*, 2025 WL 3692144, at *7 (URL and device data insufficient to allege injury); *Khamooshi*, 2025 WL 2822879, at *2 ("browsing activity" and "device fingerprints" are "insufficient to establish a concrete privacy injury"). Even giving Plaintiff the benefit of the doubt and reading her allegations charitably, it strains credulity that any sensitive information could be collected or inferred from her visit to a live music venue Website—a business just as routine and non-sensitive as the pet supply website in *Popa.*

*Brushfire Records*—decided just last month—is instructive. *See* 2025 WL 3692144, at *6–*7. There, addressing nearly identical allegations as Plaintiff, this Court held that collecting device-related information "does not cause the kind of harm that can be vindicated in federal court." *Id.* at *7 (citing *Carolus v. Nexstar Media Inc.*, No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025)). This Court rejected the argument that such collection is "highly offensive," finding the plaintiff could not "identify any harm to her privacy, much less identify a highly offensive intrusion." *Id.* The same is true here: Plaintiff identifies no personal information collected by the Magnite Pixel beyond generic device data. (Compl. ¶ 35). Like the plaintiff in *Brushfire Recs.*, her bare allegation that she "visited the Website in the last year and conducted a search" does not attribute any privacy-sensitive information to her. (*Id*. ¶ 15).

In addition, Plaintiff is a self-proclaimed "tester" of privacy laws and thus has no expectation of privacy in visiting the Website generally, as she fully expected her information would be collected to file this Complaint. *See Byars v. Sterling Jewelers,*

*Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023) (finding another tester-plaintiff represented by counsel here lacked a reasonable expectation of privacy because she fully anticipated her chat would be recorded for the purpose of bringing the lawsuit). Accordingly, dismissal under Rule 12(b)(1) is warranted.

## II. THE COMPLAINT FAILS TO STATE A CLAIM.

### A. Plaintiff's Wiretap Act Claim Fails.

In Count I, Plaintiff asserts that Defendant violated the Wiretap Act, which prohibits the interception of certain communications. 18 U.S.C. § 2511(1). To state a claim under the Wiretap Act, Plaintiff must allege that Defendant "'intentionally intercept[ed] ... any wire, oral, or electronic communication' or 'intentionally disclose[d]' or 'use[d]' the contents of any such wire, oral, or electronic communication, while 'knowing or having reason to know that the information was obtained through the [unlawful] interception.'" *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 683 (N.D. Cal. 2021) (internal citations omitted).

#### 1. Plaintiff's claims fall squarely within the one-party consent rule.

The Wiretap Act expressly provides a "one-party consent" rule, permitting interception when the interceptor is a party to the communication or when one party consents to third-party interception. 18 U.S.C. § 2511(2)(d). Put simply, Defendant cannot be liable for intercepting communications to which it was itself a party. *Id.* Because Plaintiff cannot plead facts to avoid this rule, Count I fails as a matter of law.

There is no dispute that the parties to the alleged "communications" were Plaintiff and Defendant. (*See, e.g.,* Compl. ¶¶ 1, 10, 15). Yet Plaintiff claims that Defendant—a communication participant—somehow "intercepted" communications in which it was directly engaged. (Compl. ¶¶ 36–38). Courts have repeatedly rejected this theory, holding that a website operator cannot "wiretap" its own site. *See Roe v.*

*Amgen*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (finding "Plaintiffs' [Wiretap Act] allegations are self-defeating" because the allegations were "only susceptible to an inference that Defendant, as the creator and operator of its website, consented to the use of data collection tools it installed"). The same reasoning applies here: as a participant, Defendant cannot be liable for "intercepting" communications intended for itself. Count I should therefore be dismissed.

**2. Plaintiff does not sufficiently allege the crime-tort exception.**

Plaintiff attempts to sidestep the one-party consent rule by invoking the crime-tort exception (Compl. ¶ 39), which negates consent where the interception was for the "purpose of *committing [a] … tortious act* in violation of the . . . laws of the United States or any State." 18 U.S.C. § 2511(2)(d) (emphasis added). But Plaintiff alleges no such tortious act by Defendant beyond vague, conclusory references to California common law intrusion upon seclusion. (Compl. ¶¶ 24–34, 39). This falls far short of the exception's demanding standard, which requires facts showing that "the *purpose* for the interception—its *intended use*—was criminal or tortious." *Sussman v. AM. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis added). Courts require plaintiffs to "plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording or interception itself." *Doe v. Talkiatry Mgmt. Servs., LLC*, No. 5:25-CV-00781-SSS-DTBX, 2025 WL 3190813, at *4 (C.D. Cal. Oct. 1, 2025) (Sykes, J.).

Plaintiff does not meet this standard. As explained in Section II.B, *infra*, Plaintiff fails to state an intrusion upon seclusion claim. *See Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025) (crime-tort exception inapplicable where plaintiff failed to plead viable intrusion claim). And, even if such a claim were adequately

alleged, Plaintiff does not allege that the *purpose* of Defendant's use of the Magnite Pixel was to commit a crime or tort. The Complaint offers no alternative theory of criminal or tortious conduct—because none exists.

Plaintiff's fallback argument—that Defendant installed the Magnite Pixel "with the purpose of enabling commercial exploitation of user data" (Compl. ¶ 39), is equally unavailing. Courts in this Circuit have consistently held that financial motivation does not trigger the crime-tort exception. *Roe*, 2024 WL 2873482, at *6 (no exception where "Defendant's motivations were to improve their marketing and advertising efforts"); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (exception inapplicable where the "purpose of the interception was not 'to perpetuate torts on millions of Internet users, but to make money'"). Plaintiff alleges no other criminal or tortious purpose beyond vague assertions of financial gain. (Compl. ¶¶ 3, 39). Accordingly, Count I should be dismissed with prejudice.

**3. Plaintiff does not allege "interception in transit."**

Separately, Count I fails because Plaintiff does not, and cannot, plausibly allege that Defendant collected her information "during transmission," as required by the Wiretap Act. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). As courts have recognized, "[g]iven the speed of [the Internet], the Wiretap Act's application to that form of electronic communication is undoubtedly limited." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014). Plaintiff merely asserts that "the interception occurred contemporaneously with the transmission of the communication." (Compl. ¶ 37). But reciting statutory language, without factual support, is insufficient to meet the Wiretap Act's pleading standard. *See Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1031 (N.D. Cal. 2014) (dismissing conclusory "interception" allegations as insufficient to satisfy the in-transit requirement). The Complaint offers no facts showing contemporaneous interception—because none occurred. *See In re Vizio, Inc., Consumer Priv. Litig.,*

238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("Plaintiffs must provide fair notice to Defendants when they believe [the third party] intercepts their communications.").

Courts applying both the Wiretap Act and CIPA § 631(a) uniformly hold that "in transit" means the communication must be intercepted during transmission—that is, before reaching its intended recipient. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021); *see Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 865 (C.D. Cal. 2024) ("The analysis for a violation of the Federal Wiretap Act is the same as under CIPA."). Once the data reaches its recipient, even momentarily, at that point "a communication becomes 'stored' and contemporaneous interception is no longer possible." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1077 (N.D. Cal. 2015); *Hernandez-Silva v. Instructure, Inc.*, No. 2:25-CV-02711-SB-MAA, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025) ("Learning the content of a communication after it has been sent is not eavesdropping.").

Here, Plaintiff acknowledges that the Magnite Pixel analyzes device data and "participating websites and apps *then* cater their advertisements based on a collective knowledge of the user's actions across all their devices." (Compl. ¶ 11) (emphasis added). Plaintiff concedes that, while information may be collected upon visiting the Website, the communication is accessed only after it is stored. (Compl. ¶ 11); *see In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1077. Because Plaintiff alleges no facts showing contemporaneous interception, her Wiretap Act claim fails and should be dismissed.

**B. <u>Plaintiff's CIPA Section 638 Claim Fails.</u>**

Plaintiff's Count II claim hinges on an unworkable theory that the Magnite Pixel constitutes a "trap and trace device" as defined by CIPA Section 638.50(c) to constitute a violation under CIPA Section 638.51. Under the plain text of the statute, the Magnite Pixel cannot be a "trap and trace device."

**1. As alleged, the Magnite Pixel captures content of communications.**

By definition, a "trap and trace device" captures "incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, *but not the contents of a communication*." Cal. Penal Code § 638.50(c) (emphasis added). Put another way, trap and trace devices "are tools which provide information about the 'who,' 'when,' and 'where' of communications—but not the 'what.'" *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal.Super. Apr. 1, 2025) (granting Section 638.51 demurrer based on website's alleged use of the TikTok pixel).

Plaintiff asserts the Magnite Pixel functions as a trap and trace device. (Compl. ¶¶ 3, 17, 45). At the same time, Plaintiff alleges the Magnite Pixel collects data that constitute "contents of communications" under CIPA. (*See id*. ¶¶ 16, 35). Specifically, Plaintiff does not allege that the Magnite Pixel collects only the "addressing" information contemplated by a "trap and trace device," such as a phone number or its Internet analog. Plaintiff alleges that the Magnite Pixel collects "HTTP requests, URLs visited, and other metadata exchanged as part of Plaintiff's interactions with the site." (*Id*. ¶ 35). She further claims the Magnite Pixel generally engages in "fingerprinting" techniques to associate user information with other accessible data linked to that individual. (*Id*. ¶¶ 12, 13).

This behavioral information, derived from the user's activity on a website,[3] is the very information California courts have repeatedly found to constitute "the contents of a communication" under CIPA. *See Mitchener v. CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (following *Price* and granting dismissal without leave to amend); *see also Kishnani*,

[3] As demonstrated in *Greenley v. Kochava* and elsewhere, this information is distinguishable from other information potentially collected by website tracking technologies, such as contact information, IP addresses, and device information.

2025 WL 1745726 at *4. We provide the following excerpt of *Greenley v. Kochava, Inc.* in full to convey this reality with full clarity:

> The statute does not provide clarity on the definition of "contents," and so courts have penciled in a dividing line. On one hand, courts have found that the contact information of the communicating parties and the geolocation of the communicating parties are not the "contents" of a communication under Section 631. *See People v. Suite*, 101 Cal. App. 3d 680, 686, (Cal. Ct. App. 1980) (finding the trapping of police emergency lines did not reveal the content of any communication, but "instead only disclosed the telephone numbers of the callers"); *cf. In re iPhone Application Litig*., 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (finding that mere geolocation data is not the "contents" of a communication under the federal Wiretap Act). On the other hand, information about particular activity conducted and search terms used on an app qualify as the "contents" of communication. *See Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (finding information regarding "when and how often [users] interact" with third-party apps is not "contents" of communication, but "particular activity on those apps, including products they searched for and services they used within the application," is the "contents" of communication); *In re Meta Pixel Healthcare Litig*., 647 F.Supp.3d 778, 795–96 (N.D. Cal. 2022) (finding that search terms entered into a website constitute the "contents" of a communication).
>
> The allegations in this case fall on the "contents" of communication side of the line. Plaintiff alleges that Defendant "monitor[s] and intercept[s] communications related to his personal characteristics, mode of living, purchase decisions, personal choices, app selections, spending habits, and click choices, amongst others." … Defendant collects users' "activity while using smartphone applications" … "search terms used by a device user which resulted in that user clicking on a particular advertisement" … and "a list of all interactions that user took within the app" … Based on these allegations, this case aligns better with *Hammerling* and *In re Meta* than *Suite* and *In re iPhone Application Litigation*. Thus, Plaintiff has adequately pled that Defendant intercepted the "contents" of a communication.

684 F. Supp. 3d 1024, 1051–52 (S.D. Cal. 2023) (discussing CIPA's Section 631).

Thus, while California courts recognize that third-party collection of behavioral or activity-based information may be actionable under other sections of CIPA applicable to "the contents of a communication"—i.e., CIPA's wiretapping section 631 ("Section 631")—the plain text of CIPA is clear that such collection cannot be undertaken by a "trap and trace device" under CIPA's section 638.51

("Section 638.51").

In *Mitchener*, the court concluded that where software does more than collect mere "metadata"—for example, where it also tracks user behavior and matches it to existing datasets—the information collected qualifies as "contents" under CIPA. 2025 WL 2272413, at *5–*6. Data collection that builds a profile or reveals personal habits and patterns, such as a visitor's activity on a website, reflects the substantive content of a communication, not mere signaling, that defeats a CIPA claim. *Id*.

Because the Magnite Pixel allegedly collected "contents of a communication," it cannot be a trap and trace device under Section 638.51, and the claim must be dismissed

**2. Alternatively, Plaintiff consented to Defendant's alleged data practices.**

Courts have recognized that a combination of clear disclosures, cookie banners, and opt-out functionality is sufficient to establish consent under Section 638. Thus, even assuming arguendo that the Magnite Pixel falls within Section 638.51, Plaintiff cannot plausibly deny consent to practices expressly disclosed in Defendant's cookie banner and Privacy Policy.

Plaintiff admits the Website displays a cookie banner immediately upon entry. (Compl. ¶ 16; Reilly Decl. ¶ 4). Accordingly, during her visit, Plaintiff was (1) promptly and clearly informed of the Website's use of third-party pixels, including the Magnite Pixel, through the cookie banner and Privacy Policy; and (2) provided the ability to immediately disable such pixels either by clicking the opt-out functionality or using automatic, browser-based opt-out signals. (Reilly Decl. ¶¶ 3, 4).

Courts have held that similar disclosures constitute valid consent to tracking technologies. *See, e.g.*, *Lakes*, 777 F. Supp. 3d at 1058 (dismissing CIPA and privacy claims where plaintiffs consented through the cookie banner and Privacy Policy); *see also Washington v. Flixbus, Inc.*, No. 3:25-CV-00212-H-MSB, 2025 WL 1592961, at

*4 (S.D. Cal. June 5, 2025) (same). In *Flixbus*, the court emphasized that "Defendant's Privacy Policy and Terms and Conditions explicitly notify users of the data practices at issue by disclosing the use of cookies and tracking pixels to track certain data and disclose that data to Defendant's business partners, including marketing partners." *Id.*

Defendant's disclosures mirror those upheld in *Flixbus*. Specifically, Defendant's cookie banner and Privacy Policy inform all visitors that the Website uses third-party pixels to collect data for targeted advertising and analytics. (Reilly Decl. ¶¶ 3, 4). The Privacy Policy—incorporated into Plaintiff's Complaint—further explains that such data may be shared with Defendant's analytics partners and third-party advertisers. This includes disclosures that Defendant:

- Collects "information regarding your interaction with a website, application, or advertisement (e.g. IP Address, MAC Address, SSIDs, application ID/AdID/IDFA, session navigation history and similar browsing metadata, and other data generated through applications and browsers, including cookies and similar technologies or other device identifiers or persistent identifiers), online user ID, device characteristics (such as browser/OS version), web server logs, application logs, first party cookies, third party cookies, web beacons, clear gifs and pixel tags."
- Creates or infers data that "[Defendant], certain partners, social media companies, and third parties operating on [Defendant's] behalf, create and infer Personal Data such as Preference Data or Aggregate Data based on [Defendant's] observations or analysis of other Personal Data processed under this Policy, and [Defendant] may correlate this data with other data [Defendant] process[es] about you."

- Uses "cookies and other tracking technologies" for various purposes, including for "analytics," "retargeting," "Targeted Advertising," and "other advertising or marketing purposes…"
- Gives visitors the ability to easily and immediately opt-out of such technologies, as described in sections titled "Targeted Advertising" and "US State & California Privacy Rights & Choices."

(Compl. ¶ 1; Reilly Decl. ¶ 3).

Although Plaintiff avoids providing or quoting Defendant's cookie banner, its content is clear: the banner states Defendant uses cookies and similar technologies "for a variety of purposes, such as enabling the sites to function, to personalize your experience when using our sites, to provide you with advertisements based on your interests, and for analytical purposes," and includes a direct link to the full Privacy Policy. (Reilly Decl. ¶ 4; *see* Compl. ¶ 16). These disclosures and opt-out mechanisms establish consent as a matter of law, barring Plaintiff's Count II claim.

**3. To the extent the Court finds CIPA to be ambiguous, the rule of lenity applies to resolve them narrowly.**

Under California's "rule of lenity," ambiguous criminal statutes should be resolved by giving the defendant every reasonable doubt on questions of interpretation. *People v. Reynoza*, 15 Cal.5th 982, 1012 (2024); *see Harrott v. Cnty. of Kings*, 25 Cal.4th 1138, 1154, (2001); *see also Bittner v. United States*, 598 U.S. 85, 103 (2023). That is the case here. Under the rule of lenity, courts need not speculate whether CIPA should or should not apply to third-party website tracking technology.

CIPA was drafted in 1967 to address wiretapping of telephone communications; it "was not drafted with the internet in mind." *Doe v. Eating Recovery Ctr.*, No. 23-CV-05561-VC, 2025 WL 2971090, at *4 (N.D. Cal. Oct. 17, 2025). But because CIPA's language is ambiguous, the rule of lenity requires courts to apply the narrower of multiple potential interpretations. *See id.* at *1 (applying

rule of lenity to interpret CIPA Section 631 and cautioning courts to "generally resolve CIPA's many ambiguities in favor of the narrower interpretation"); *see also Moss v. ResortPass Inc*, No. 24CU023415C, 2025 WL 3452360, at *1 (Cal. Super. Oct. 30, 2025) (applying *Eating Recovery Center*'s rule-of-lenity approach to CIPA and sustaining demurrer).

Thus, to the extent that this Court determines that CIPA Section 638 is ambiguous on its definition of "trap and trace device" or "consent"[4] as detailed by Defendant above, the Court should follow *Eating Recover Cntr*., in order to avoid "contort[ing] [itself] to fit the type of conduct alleged in this case into the language of a 1967 criminal statute about wiretapping." 2025 WL 2971090, at *7; *see Rodriguez v. Ink America Int'l Group LLC*, No. 25STCV15350, slip op. at 8 (Cal. Super. Dec. 10, 2025) (Reilly Decl. ¶ 5) (finding ambiguity in CIPA's pen-register provisions and declining, under lenity, to extend Section 638 to routine website analytics).[5]

**C. <u>Plaintiff's Intrusion Upon Seclusion Claim Fails.</u>**

Plaintiff's Count III claim for intrusion upon seclusion fails for a myriad of reasons. "To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy [,]' and (2) that the intrusion 'occur[red] in a manner highly offensive to a reasonable person.'" *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024). Plaintiff does not meet either element.

---

[4] The term "consent" is not defined by CIPA, much less how the concept of consent might apply to website browsing sessions. In the absence of any clarity on this question, the Court should apply the rule of lenity.

[5] *Ink America* also found that an expansive interpretation of CIPA would effectively "criminaliz[e] web-based analytical tools" that the CCPA expressly contemplates, thereby "seemingly render[ing] the CCPA void." *Ink America*, slip op. at 7. This reasoning aligns with the Legislature's clear decision to regulate online data collection through the CCPA's civil framework—not through CIPA's criminal penalties. *See* Legislative History, *supra*.

**1. Plaintiff fails to assert a reasonable expectation of privacy.**

"A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill v. NCAA*, 7 Cal. 4th 1, 37 (1994). Plaintiff fails to establish a reasonable expectation of privacy during her single alleged visit to the Website—an interaction she likely initiated for the purpose of filing this lawsuit. (*See* Compl. ¶ 15); *Byars*, 2023 WL 2996686, at *1 (no expectation of privacy for a tester-plaintiff who accessed the website to bring suit). Courts consistently hold that voluntarily engaging with a commercial website negates any reasonable expectation of privacy. *See Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *5 (S.D. Cal. May 8, 2024) (no reasonable expectation of privacy where plaintiff provided "name, address, credit card number(s), and billing information" on a commercial website), aff'd sub nom. *Thomas v. Papa John's Int'l, Inc.*, No. 22CV2012 DMS, 2025 WL 1704437 (9th Cir. June 18, 2025); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (no expectation of privacy in routine collection of user interaction and transaction data on retail website).

Plaintiff's vague claim that data collection "occurs in a private and sensitive setting" (Compl. ¶ 24) does nothing to salvage her argument. The Website is for a live event venue, hardly a private environment, and does not solicit personal information. Plaintiff alleges no facts that would lead a reasonable user to believe activity on the Website is private. Instead, the Complaint cherry-picks a snippet of Defendant's Privacy Policy to fabricate an expectation of privacy that simply does not exist.[6] (*Id.* ¶ 1). That same Privacy Policy expressly discloses the very practices Plaintiff now challenges (*see* Section II.B.2 *supra*; Reilly Decl. ¶ 3). Courts have made clear that even without advance notice or consent, "accepted community norms" in commercial website spaces "point away from a reasonable expectation of

[6] As discussed in Section II.B.3, *supra,* Plaintiff admits she had notice of the Magnite Pixel by acknowledging Defendant's Privacy Policy and the cookie banner that disclosed its use. (Compl. ¶¶ 1, 16; Reilly Decl. ¶¶ 3, 4).

privacy." *D'Angelo v. Penny OpCo, LLC*, No. 23-CV-0981-BAS-DDL, 2023 WL 7006793, at *11 (S.D. Cal. Oct. 24, 2023). Under these circumstances, no reasonable person could expect privacy on the Website.

Moreover, Plaintiff "does not identify … what type of data was collected from her" that could support any expectation of privacy. *Hernandez-Silva*, 2025 WL 2233210, at *8. As explained in Section I, *supra*, the Complaint offers only generalized allegations about the Magnite Pixel's capabilities and fails to identify any personal information beyond generic device and browsing data. (Compl. ¶ 35); *see Hernandez-Silva,* 2025 WL 2233210, at *8 (no reasonable expectation of privacy where complaint did not identify specific products used or data collected); *Saeedy v. Microsoft Corp.*, No. 23-CV-1104, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (no reasonable expectation of privacy in "mouse movements, clicks, keystrokes, keywords, URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections to a shopping cart, and website browsing activities"). In short, Plaintiff's allegations fall well short of establishing any legally recognized privacy interest, and her claim therefore fails.

**2. Plaintiff does not allege a "highly offensive" intrusion.**

Even assuming that Plaintiff could assert a reasonable expectation of privacy (she cannot), Count III still fails because she cannot show a "highly offensive" intrusion into her information. Whether an intrusion is "highly offensive to a reasonable person" requires a "holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Hammerling*, 615 F. Supp. 3d at 1090. Courts routinely hold that the collection and disclosure of "routine commercial behavior" to third parties "is not a 'highly offensive' intrusion of privacy." *Hammerling*, 615 F. Supp.

3d at 1090; *see Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of user's browser history to third parties not highly offensive). General allegations, like those in the Complaint, are insufficient to meet this standard. *See Thomas*, 2024 WL 2060140, at *7 (vague allegations of "mental anguish and suffering" and that defendant utilized information for "business gain and economic value" insufficient to allege highly offensive intrusion).

Here, Plaintiff offers conclusory assertions rather than specific facts. *See id.* Plaintiff invokes sweeping claims of "dishonesty" and "deception" and speculates that information the Magnite Pixel *could* collect, such as general contact details, device data, and "interests," "*can*" be misused for identity theft or other harms. (Compl. ¶¶ 24, 25) (emphasis added). But critically absent are allegations showing how the actual data collected from Plaintiff herself—including generic device information, could be considered highly offensive—because it is not. (Compl. ¶ 35; *see* Section I, *supra*). These categories of information fall well below the threshold of egregiousness contemplated by law. *Popa*, 153 F.4th at 791. Plaintiff's failure to allege any facts demonstrating a truly offensive intrusion fatally undermines Count III, and dismissal is warranted.

## CONCLUSION

Based on the foregoing, Defendant respectfully submits that the Court should dismiss Plaintiffs' claims with prejudice.

Dated: January 16, 2026 MANATT, PHELPS & PHILLIPS, LLP

By: *s/ Brandon P. Reilly*
Brandon P. Reilly
Emily V. Whitely
Attorneys For Defendant,
Anschutz Entertainment Group, Inc.

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1**

The undersigned, counsel of record for Defendant Anschutz Entertainment Group, Inc., certifies that this brief contains 6,923 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 16, 2026 MANATT, PHELPS & PHILLIPS, LLP

By: *s/ Brandon P. Reilly*
Brandon P. Reilly
Attorneys For Defendant,
Anschutz Entertainment Group, Inc.