**MANATT, PHELPS & PHILLIPS, LLP**
BRANDON P. REILLY (Bar No. CA 278012)
BReilly@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone:   916.552.2300
Facsimile:    916.552.2323

EMILY V. WHITELY (*Pro Hac Vice*)
EWhitely@manatt.com
7 Times Square
New York, NY 10036
Telephone:  212.790.4500

*Attorneys for Defendant*
ANSCHUTZ ENTERTAINMENT GROUP, INC

# UNITED STATES DISCTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVIA GARCIA,<br><br>Plaintiff,<br><br>v.<br><br>ANSCHUTZ ENTERTAINMENT GROUP, INC., a Colorado corporation, d/b/a WWW.SHRINEAUDITORIUM.COM,<br><br>Defendant. | Case No.: 5:25-cv-2282-SSS-DTB<br><br>Assigned to Hon. Sunshine S. Sykes<br><br>**DEFENDANT ANSCHUTZ ENTERTAINMENT GROUP, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Filed concurrently with Request for Judicial Notice; Declaration of Brandon P. Reilly; and [Proposed] Order<br><br>Date:          May 1, 2026<br>Time:         2:00 p.m.<br>Courtroom:  2<br><br>Complaint Filed:   September 2, 2025<br>Trial Date             None Set |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, May 1, 2026 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2, 2nd Floor, located in the George E. Brown, Jr. Federal Building and United States Courthouse, 3470 Twelfth Street Riverside, California 92501, the Honorable Sunshine S. Sykes presiding, Defendant Anschutz Entertainment Group, Inc. ("Defendant" or "AEG"), will and hereby does move to dismiss Plaintiff Silvia Garcia's ("Plaintiff") First Amended Complaint ("FAC") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This Motion is made on the grounds that Plaintiff failed to state a claim as a matter of law for violations of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 *et seq.*; violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51; and intrusion upon seclusion under common law.

Further, Plaintiff lacks standing to bring these claims because she failed to plausibly allege that she suffered damages of any kind.

The motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; Request for Judicial Notice; Declaration of Brandon P. Reilly; all pleadings, records, and files in this action; any evidence or argument presented at the hearing; and any and all papers on file with the Court.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place initially on March 5, 2026.

Dated: March 13, 2026                     MANATT, PHELPS & PHILLIPS, LLP


By:     s/ Brandon P. Reilly
        Brandon P. Reilly
        Emily V. Whitely
        Attorneys for Defendant, Anschutz
        Entertainment Group, Inc.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

BACKGROUND ........................................................................................................ 3

    I.     LEGISLATIVE HISTORY ........................................................................ 3

    II.    SUMMARY OF ALLEGATIONS ............................................................. 5

LEGAL STANDARD ................................................................................................ 6

ARGUMENT ............................................................................................................. 7

    I.     PLAINTIFF LACKS ARTICLE III STANDING ................................... 7

        A. Plaintiff Fails to Allege Concrete Harm.. ........................................... 8

        B. Plaintiff's "Tester" Status Defeats Standing.................................... 10

    II.    PLAINITFF FAILS TO STATE A CLAIM. ......................................... 11

        A. Plaintiff's Consent Defeats Her Claims.......................................... 11

        B. Plaintiff's ECPA Claim Fails. ........................................................ 13

            1.    The One-Party Consent Rule Bars the Claim Absent a Crime-Tort Exception. .................................................... 14

            2.    Plaintiff Fails to Allege "Interception in Transit." ................... 15

        C. Plaintiff's CIPA Section 638.51 Claim Fails.................................. 17

            1.    CIPA Does Not Apply to Online Tracking Technologies........ 17

                a. The Rule of Lenity Applies to CIPA.. ......................... 18

            2.    The Third-Party Cookies Capture "Contents.".......................... 19

            3.    Plaintiff Fails to Allege Any "Communication". ..................... 21

        D. Plaintiff's Intrusion Upon Seclusion Claim Fails. ........................... 22

            1.    Plaintiff Cannot Assert a Reasonable Expectation of Privacy. ........................................................................... 22

            2.    Plaintiff Fails to Allege Highly Offensive Conduct. ................ 23

CONCLUSION......................................................................................................... 24

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................7

*Bradshaw v. Lowe's Cos., Inc.*,
  No. 25cv0742 DMS (MMP), 2025 WL 3171740
  (S.D. Cal. Nov. 12, 2025) ....................................................................................9

*Byars v. Sterling Jewelers, Inc.*,
  No. 5:22 cv 01456, 2023 WL 2996686
   (C.D. Cal. Apr. 5, 2023) ..........................................................................10, 11, 22

*Cahill v. Liberty Mutual Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996) ................................................................................7

*D'Antonio v. Smith & Wesson Inc.*,
  No. 25-cv-03085-PCP, 2026 WL 446310
  (N.D. Cal. Feb. 17, 2026).................................................................................21

*Dawidzik v. Tesla, Inc.*,
  No. EDCV 25-01982-KK-SPx, 2025 WL 3786963
  (C.D. Cal. Dec. 29, 2025) ..............................................................................9, 10

*Doe v. Eating Recovery Ctr.*,
  806 F. Supp. 3d 1109 (N.D. Cal. 2025)...........................................................19

*Doe v. Talkiatry Mgmt. Servs., LLC*,
  No. 5:25-cv-00781-SSS-DTBx, 2025 WL 3190813
  (C.D. Cal. Oct. 1, 2025) ..............................................................................14, 15

*Doe v. Talkiatry Mgmt. Servs., LLC*,
  No. 5:25-cv-00781-SSS-DTBx, 2026 WL 206483
  (C.D. Cal. Jan. 22, 2026) ................................................................................14

*Esparza v. Kohl's, Inc.*,
  723 F. Supp. 3d 934 (S.D. Cal. 2024) ........................................................22, 23

*Flanagan v. Flanagan*,
  27 Cal. 4th 766 (2002).................................................................................3, 17

*Glinoga v. Sullivan Ent. Inc.*,
  No. 25CV0707-GPC(SBC), 2025 WL 3035032
  (S.D. Cal. Oct. 30, 2025) ................................................................................10

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......................................................20, 21

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...........................................................23

*Harrott v. Cnty. of Kings*,
25 Cal. 4th 1138 (2001) ....................................................................................18

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .............................................................16

*Hellon & Assocs., Inc. v. Phoenix Resort Corp.*,
958 F.2d 295 (9th Cir. 1992) ...........................................................................18

*Hernandez-Silva v. Instructure, Inc.*,
No. 2:25-CV-02711-SB-MAA, 2025 WL 2233210
(C.D. Cal. Aug. 4, 2025) ..................................................................................16

*Hill v. NCAA*,
7 Cal. 4th 1 (1994) ......................................................................................22, 23

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..............................................................16

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .............................................................6, 7

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................16

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ..............................................................18

*Khamooshi v. POLITICO LLC*,
No. 24-CV-07836-SK, 2025 WL 2822879
(N.D. Cal. Oct. 2, 2025) .....................................................................................8

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ..............................................................................7

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726
(N.D. Cal. June 24, 2025) .............................................................................8, 20

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ............................................................................. 15

*Lakes v. Ubisoft*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ................................................. 12, 13, 15

*Lightoller v. Jetblue Airways Corp.*,
No. 23-CV-00361-H-KSC, 2023 WL 396382
(S.D. Cal. June 12, 2023) ..................................................................................... 8

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ............................................................... 14

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................. 23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................................................. 7

*Maghoney v. Dotdash Meredith, Inc.*,
No. 24-CV-2394-AJB-BJW, 2026 WL 497402
(S.D. Cal. Feb. 23, 2026) ............................................................................ 8, 9, 23

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ............................................................. 16

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ................................................................. 8

*Mitchener v. CuriosityStream, Inc.*,
No. 25-cv-01471-NW, 2025 WL 2272413
(N.D. Cal. Aug. 6, 2025) ................................................................................ 8, 20

*Moss v. ResortPass Inc.*,
No. 24CU023415C, 2025 WL 3452360
(Cal. Super. Ct. San Diego Oct. 30, 2025) ........................................................ 19

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ............................................................................... 7

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ............................................................... 15

*People v. Reynoza*,
15 Cal. 5th 982 (2024) ....................................................................................... 18

- iv -

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Perez v. Romantix Online, Inc.*,
No. 25-CV-02465-NW, 2025 WL 3085786
(N.D. Cal. Oct. 27, 2025) .................................................................................12

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025).........................................................................8, 9

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977
(Cal. Super. Ct. Los Angeles Apr. 1, 2025) ......................................................20

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-cv-08735, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ....................11

*Rodriguez v. Brushfire Recs.*,
No. 2:25-CV-09797-CAS-PDx, 2025 WL 3692144
(C.D. Cal. Dec. 15, 2025).............................................................................9, 10

*Rodriguez v. Ink America Int'l Group LLC*,
No. 25STCV15350, 2025 WL 4034985
 (Cal. Super. Ct. Los Angeles Dec. 10, 2025).....................................................19

*Roe v. Amgen*,
No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482
(C.D. Cal. June 5, 2024) ............................................................................14, 15

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004).............................................................................7

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021)..........................................................22, 23

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017).................................................................11

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021)........................................................................................17

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .............................................................................................7

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ...............................................................................................7

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014)...................................................................16

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .............................................................................15

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22cv2012 DMS (MSB), 2024 WL 2060140
(S.D. Cal. May 8, 2024), aff'd, No. 24-3557, No. 24-3834,
2025 WL 1704437 (9th Cir. June 18, 2025) ...................................................22, 23

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..............................................................................................8

*Washington v. Flixbus, Inc.*,
No. 3:25 CV 00212 H MSB, 2025 WL 1592961
(S.D. Cal. June 5, 2025) ......................................................................................13

**STATUTES & RULES**

11 CCR §§ 7000-7600 .............................................................................................4

18 U.S.C. § 2511..................................................................................2, 11, 13, 14

Cal. Civ. Code §§ 1798.100, *et seq* ...............................................................passim

Cal. Pen. Code § 502(a)........................................................................................18

Cal. Pen. Code § 631 ..................................................................................3, 16, 21

Cal. Pen. Code § 632 ..................................................................................3, 17, 18

Cal. Pen. Code § 638.50(c).........................................................................2, 17, 19

Cal. Pen. Code § 638.51 ................................................................................passim

Fed. R. Evid. 201 ...................................................................................................7

Fed. R. Civ. P. 12(b)(1) ..............................................................................6, 7, 8, 11

Fed. R. Civ. P. 12(b)(6) ...........................................................................................7

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- vi -

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") against Anschutz Entertainment Group, Inc. ("AEG" or "Defendant") fails to establish Article III standing or to state a viable claim under any theory pled. Although some lawsuits challenging website tracking technologies under the California Invasion of Privacy Act ("CIPA") and related statutes involve allegations of sensitive or highly personal data, this case does not. Plaintiff's allegations arise from a single, self-initiated visit to a live entertainment venue website. Plaintiff admits her visit occurred not only out of consumer interest, but also because she is a privacy "tester" who visits websites to assess legal compliance. (FAC ¶ 81). From that solitary interaction, Plaintiff attempts to recharacterize routine, disclosed website data practices as unlawful "wiretapping," criminal surveillance, and egregious invasions of privacy. The FAC does not support those conclusions.

First, Plaintiff alleges no concrete or particularized injury. She does not identify any sensitive or confidential information collected from her. Instead, the FAC relies on generalized, boilerplate descriptions of information that third-party cookies *may* collect in the abstract, while tying only routine technical data such HTTP requests, browser metadata, and URLs Plaintiff visited to herself. (*Id.* ¶¶ 82, 86, 92, 106, 109). The Website serves a live music venue and does not collect sensitive data typically associated with healthcare or financial services websites. The Ninth Circuit and district courts have repeatedly held that such routine information does not implicate a legally protectable privacy interest and cannot confer standing.

Second, even if Plaintiff could establish standing, her claims fail as a matter of law. Plaintiff's own allegations establish that Defendant disclosed its cookie use through a cookie banner and Privacy Policy and provided users with tools to manage preferences, which Plaintiff allegedly reviewed and utilized. These realities not only

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 1 -

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

establish consent, but also contradict Plaintiff's claim that she—a privacy "tester"—was "unaware" of the tracking technologies being used.

The Federal Electronic Communications Privacy Act ("ECPA") claim collapses under the one-party consent rule, which bars liability where, as here, the alleged interceptor was a party to the communication. 18 U.S.C. § 2511(2)(d). Her fallback reliance on the crime-tort exception is equally unavailing: Plaintiff pleads no facts showing any criminal or tortious purpose beyond vague assertions of financial motivation—an argument courts have rejected. Nor does Plaintiff plausibly allege contemporaneous interception of communications "in transit," relying instead on conclusory recitations of statutory language.

Plaintiff's CIPA Section 638.51 claim—a criminal statute—fails for independent reasons. The FAC alleges that the same third-party technologies both (1) collect substantive information about website interactions, which constitutes the "contents of a communication," *and* (2) function as "trap and trace devices." Both cannot be true, as the statute expressly excludes devices that capture the contents of communications. Cal. Penal Code § 638.50(c). Courts have cautioned against stretching CIPA's pen-register provisions, enacted in 1967, to encompass modern website analytics tools, and the rule of lenity further counsels against an expansive interpretation.

Finally, Plaintiff's intrusion upon seclusion claim fails because she cannot plausibly allege either a reasonable expectation of privacy or conduct that would be highly offensive to a reasonable person. Plaintiff voluntarily visited a commercial website that displayed a cookie banner upon entry, alleges only the collection of routine browsing and device data, and concedes that targeted tracking ceased on the Website after she rejected cookies. Such allegations fall far short of the egregious conduct required to sustain a common-law privacy claim.

In short, the FAC repackages routine, disclosed website operations and a single

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -
ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

tester-initiated visit into sweeping claims of criminal surveillance and privacy violations. Plaintiff's theory would effectively criminalize the standard technologies that underpin the modern internet and digital economy. Neither the facts alleged nor the governing law support that transformation. For these reasons, and as set forth below, all claims should be dismissed with prejudice.

**BACKGROUND**

### I.   LEGISLATIVE HISTORY

CIPA was enacted in 1967. ECPA passed in 1968. As explained by the California Supreme Court, CIPA was enacted to "replac[e] prior laws that permitted the recording of telephone conversations with the consent of one party to the conversation." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768-69 (2002).

CIPA was amended well into the Internet Era, yet does not mention the Internet. In 2015, AB 929 (Chau) amended CIPA to encompass pen registers and trap and trace devices. *See* A.B. 929, 2015-2016 Reg. Sess. (Cal. 2015). However, like the 1967 version, the 2015 amendment to CIPA did not contain the words "Internet," "website," "cookies," "pixels," or "advertising," despite the widespread use of Internet websites and tracking technologies when the bill was passed. Rather, the focus remained on telephones and other person-to-person communications. *See, e.g.,* Cal. Pen. Code § 631(a) (referring to "telegraph or telephone wire, line, cable, or instrument" and "internal telephone communication system"); § 631(b) (referring to a "public utility," "telephone company," and "telephonic communication systems"); § 632 (referring to a "telegraph, telephone, or other device."). As stated by the bill's sponsor, Assemblymember Chau, "pen registers/trap and trace devices are used by law enforcement for telephone surveillance to record incoming and outgoing phone numbers from a tapped line" and "[a] pen/trap order is only for the capture of incoming and outgoing phone numbers." *See* AB 929, Bill Analysis (April 21, 2015) at 10–11.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 3 -

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

While CIPA does not address websites or tracking technologies, California has a comprehensive privacy law that does: The California Consumer Privacy Act of 2018, Cal. Civ. Code § 1798.100 *et seq.*, including as amended by the California Privacy Rights Act of 2020 and its implementing regulations, 11 CCR §§ 7000-7600 (collectively, the "CCPA"). Altogether, the CCPA's text contains the word "Internet" 35 times, "website" 46 times, and "advertising" 30 times. *See id.* The CCPA regulates the use of the same online tracking technologies alleged by Plaintiff, including by requiring websites to (i) disclose whether the business shares personal information for cross-context behavioral advertising;[1] (ii) disclose categories of third-parties to whom the business discloses personal information (Cal. Civ. Code § 1798.110(c)(4); 11 CCR §§ 7010-7012); (iii) offer a link allowing the website visitor to opt-out of such sharing (*id.* at §§ 1798.120, 1798.135; 11 CCR §§ 7026); (iv) respond to website visitors' browser signals that can automatically and instantly communicate such opt-out requests (*id.* at § 1798.135(b); 11 CCR § 7025); (v) request a report on all such sharing (*id.* at §§ 1798.115(a)-(b); 11 CCR § 7024); (vi) request the deletion of all personal information maintained by the business (*id.* at §§ 1798.105, 1798.130; 11 CCR § 7022); and (vii) enter contracts with all third parties and service providers with which personal information is shared that incorporate privacy-protective clauses mandated by CCPA. (*id.* at §§ 1798.100(d), 1798.140(ag)(1); 11 CCR §§ 7050-7053).

Last year, the California Senate unanimously voted to amend CIPA to clarify that the statute is not intended to apply to business and commercial services. *See* SB 690, 2025-26 Regulatory Session (March 24, 2025) (CIPA's private right of action "does not apply to the processing of personal information for a commercial

---

[1] "Cross-context behavioral advertising" means "the targeting of advertising to a consumer based on the consumer's personal information obtained from the consumer's activity across businesses, distinctly branded internet websites, applications, or services, other than the business, distinctly branded internet website, application, or service with which the consumer intentionally interacts." Cal. Civ. Code § 1798.140(k); §§ 1798.115(c), 1798.130(a); 11 CCR § 7013.

- 4 -

Manatt, Phelps & Phillips, LLP
Attorneys at Law
San Francisco

purpose"). The Senate Public Safety Committee's analysis noted that CIPA was "never intended to apply" to "website analytics or online advertising," which is already governed by the . . . CCPA." SB 690 Analysis, Cal. Senate Pub. Safety Comm., 2025-26 Regulatory Session (April 25, 2025).[2]

## II.   <u>SUMMARY OF ALLEGATIONS</u>

AEG is a global live entertainment company that owns and operates venues, promotes concerts, and produces events across the world. As part of its portfolio, AEG, through its subsidiary, operates the Shrine Auditorium in Los Angeles ("Shrine"), and owns and manages the official website, www.shrineauditorium.com (the "Website"). The Website is Shrine's primary digital platform, enabling users to view events, access ticketing, and find venue information such as seating charts and parking.

Plaintiff alleges that she visited the Website in August 2025, both as a "tester" of privacy violations and to browse information about AEG's products and services. (FAC ¶ 81). She alleges that AEG integrated various third-party tools into the Website, including analytics, advertising, and marketing technologies that rely on cookies, pixels, and similar scripts (collectively, "third-party cookies"). According to Plaintiff, these third-party cookies may collect technical and behavioral data associated with website visits, such as page URLs, timestamps, device identifiers, and browsing interactions. (*Id.* ¶¶ 16-23, 30-62).

The FAC alleges the use of several third-party cookie providers, including Magnite, TikTok, Meta, The Trade Desk, Xandr, Google Ads, and Amazon advertising services. (*Id.* ¶¶ 37-62). Plaintiff alleges that third-party cookies collect data upon page load—including page views, timestamps, browser and device identifiers, user-agent strings, and advertising IDs. (*Id.* ¶¶ 20, 37-62).

---

[2] On October 8, 2025, Governor Newsom signed the California Opt Me Out Act, which requires websites to offer a simple, built-in opt-out signal allowing immediate opt-outs from third-party tracking. *See* AB 566 (enrolled Sept. 15, 2025) (adding Cal. Civ. Code § 1798.136).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

Plaintiff contends that a cookie banner "immediately" appeared upon visiting the Website. (*Id.* ¶ 83). The banner notifies users that the Website uses third-party cookies and provides users options to "Accept All," "Reject All," or manage cookie preferences through a cookie management platform ("CMP"). (*Id.* ¶¶ 63-66, 84).

Plaintiff admits she reviewed the cookie banner and AEG's linked Privacy Policy. (*Id.* ¶¶ 24-29, 63-67, 87). She acknowledges that the Privacy Policy discloses third-party cookie use for purposes including analytics, targeted advertising, and marketing. (*Id.* ¶¶ 24-29).

Plaintiff also admits that third-party cookies no longer operated on the Website after selecting "Reject All" or disabling non-essential cookies through the CMP. (*Id.* ¶ 67). She contends that cookies placed *before* her preference selection were not retroactively deleted and could hypothetically be used by third parties on other websites. (*Id.* ¶¶ 67-69).

According to Plaintiff, the Website embeds Google reCAPTCHA technology on the "Contact Us" page through an iframe associated with a third-party form service. (*Id.* ¶¶ 71-75). She alleges that the reCAPTCHA technology may place advertising or profiling cookies on users' browsers. (*Id.*).

Based on these allegations, Plaintiff asserts the following causes of action: (1) Violations of ECPA; (2) Violations of CIPA Section 638.51; and (3) intrusion upon seclusion under California common law. Plaintiff seeks "actual and statutory damages," restitution, disgorgement, attorneys' fees and costs, and injunctive relief. (*Id. Prayer for Relief*).

## LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds for federal subject matter jurisdiction. If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *In re Sony Gaming Networks & Customer Data Sec. Breach*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

*Litig.*, 903 F. Supp. 2d 942, 952 (S.D. Cal. 2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998)). A jurisdictional challenge under Rule 12(b)(1) may be facial or factual. *Id.* (*citing Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). Where, as here, the attack is facial, "the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction." *Id.*

A Rule 12(b)(6) motion "'tests the legal sufficiency of the claims asserted in the complaint.'" *Id.* at 952-53 (*citing Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001)). This Court "'must accept factual allegations as true and must draw reasonable inferences from them in favor of the nonmoving party.'" *Id.* (*citing Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996)). However, this Court is not required to accept "'legal conclusions'" as true. *Id.* (*citing Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). While "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)," there are two exceptions: "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## ARGUMENT

### I.   PLAINTIFF LACKS ARTICLE III STANDING.

To establish Article III standing, a plaintiff must allege an injury that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A particularized injury "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). A statutory violation alone does not suffice; "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

private defendant in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

Following *TransUnion*, courts have dismissed privacy suits where, as here, plaintiffs allege only abstract statutory violations without real-world harm—including an affirmation by the Ninth Circuit late last year. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 794-95 (9th Cir. 2025) (affirming dismissal of wiretapping claim under Rule 12(b)(1)); *see also Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 396382, at *3 (S.D. Cal. June 12, 2023) ("a bare CIPA violation by itself is insufficient to demonstrate Article III injury"); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *3-*4 (N.D. Cal. June 24, 2025) (general allegations of interception insufficient); *Khamooshi v. POLITICO LLC*, No. 24-CV-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (dismissing routine website tracking claims); *Maghoney v. Dotdash Meredith, Inc.*, No. 24-CV-2394-AJB-BJW, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) (same). Plaintiff's allegations fall squarely within this rule.

## A. <u>Plaintiff Fails to Allege Concrete Harm.</u>

Plaintiff fails to allege a concrete injury because she does not identify any legally protectable privacy interest in the information at issue. To establish standing, a plaintiff must plead facts showing that the data allegedly collected is meaningfully private—not merely routine or observational. *See Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023). Where, as here, a plaintiff alleges only speculative or hypothetical harm untethered to her own data or conduct, Article III standing is lacking. *See Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025).

*Popa* forecloses Plaintiff's theory of injury. There, the Ninth Circuit affirmed dismissal for lack of standing despite allegations that a third party collected "over 30 different categories of information" from a plaintiff's interaction with a retail website.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

153 F.4th at 786. The court held that the information was not "embarrassing, invasive, or otherwise private," and analogized the alleged conduct to "a store clerk's observing shoppers." *Id.* at 791. Following *Popa*, courts consistently hold allegations involving URLs, IP addresses, device identifiers, or browser metadata do not implicate a legally protected privacy interest. *See Rodriguez v. Brushfire Recs.*, No. 2:25-CV-09797-CAS-PDx, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025); *Dawidzik v. Tesla, Inc.*, No. EDCV 25-01982-KK-SPx, 2025 WL 3786963, at *4 (C.D. Cal. Dec. 29, 2025); *Bradshaw v. Lowe's Cos., Inc.*, No. 25cv0742 DMS (MMP), 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025).

The recent decision in *Maghoney v. Dotdash Meredith, Inc.* is instructive. 2026 WL 497402, at *5. There, the court dismissed invasion of privacy claims for lack of standing because the plaintiff did not allege any concrete injury from the disclosure of health-related website searches. *Id.* The court emphasized the failure to plausibly allege the searches were personally identifiable or linked to the plaintiff, or that the alleged data sharing caused any actual harm. *Id.* As a result, the allegations did not amount to a highly offensive disclosure.

Measured against this standard, Plaintiff's allegations fall short: she alleges only a single website visit and identifies no specific personal information collected from her. (FAC ¶ 81). Instead, the FAC relies on abstract, generalized, and boilerplate descriptions of data that third-party cookies *might* collect. (*Id.* ¶¶ 30-62, 76-80, 114). As pleaded, the only information Plaintiff ties to herself is routine device-level data—such as an IP address and user-agent information. (*Id.* ¶¶ 82, 92, 106, 109). Her asserted injury reduces to a subjective preference: that she "would not have visited the Website" and does not intend to return. (*Id.* ¶¶ 87-88). That is not a concrete injury.

Plaintiff's reliance on her alleged selection of "Reject All" cookies does not change the analysis. She concedes that once she rejected cookies, third-party scripts "no longer fire[d] on the Website." (*Id.* ¶ 67). She then speculates that cookies allegedly

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

placed *before* she selected "Reject All" remained on her browser and could affect tracking on other websites. (*Id.* ¶¶ 67, 69). Plaintiff does not explain why other websites' use of similar tracking technologies is relevant to Defendant, how it caused her injury, or how any purported injury is attributable to Defendant. Even accepting this strained and confusing theory, Plaintiff still does not, and cannot, identify any specific information Defendant collected from her Website visit. *See Brushfire Recs.*, 2025 WL 3692144, at *7; *Dawidzik*, 2025 WL 3786963, at *4.

Nor does Plaintiff's reCAPTCHA theory supply standing. Plaintiff alleges Defendant utilizes reCAPTCHA technology to "bypass" the CMP. (FAC ¶ 71). However, she asserts that this technology operates only on the Website's "Contact Us" page. (*Id.*). She does not allege she visited that page, interacted with its form, or otherwise engaged with the challenged technology. She also does not allege what information about her, if any, was shared as a result. Since Plaintiff cannot plausibly allege meaningful interaction with the challenged feature, she lacks standing to sue over it. *See Glinoga v. Sullivan Ent. Inc.*, No. 25CV0707-GPC(SBC), 2025 WL 3035032, at *4 (S.D. Cal. Oct. 30, 2025).

In short, Plaintiff alleges a statutory violation without concrete, individualized harm, which is insufficient to establish Article III jurisdiction.

## B. Plaintiff's "Tester" Status Defeats Standing.

Plaintiff acknowledges that she is a self-described privacy "tester" who visits websites to evaluate legal compliance. (FAC ¶ 81). That admission independently defeats Article III standing.

A claim premised on an invasion of privacy requires a reasonable expectation of privacy. Courts in this District have consistently held that tester plaintiffs lack standing where they access a website expecting data collection for the purpose of bringing suit. In *Byars v. Sterling Jewelers, Inc.*, the court dismissed privacy claims for lack of standing where the plaintiff visited the website anticipating data collection. No.

- 10 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5:22-cv-01456, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023). More recently, the court reached the same conclusion in *Rodriguez v. Autotrader.com, Inc.*, holding that a tester who visits a website expecting data collection "cannot claim an injury when her expectations were ultimately met." No. 2:24-cv-08735, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025).

Although Plaintiff attempts to bolster her assertions that she was "genuinely interested" in the Website offerings, her own allegations confirm that her conduct was not ordinary consumer behavior. (FAC ¶ 81). She asserts she would not be able to discover a violation on the Website because she lacks the "technical knowledge" to understand such technology—yet simultaneously alleges that she retained a computer expert to conduct a forensic investigation of the Website. (*Id.* ¶ 88). That internal inconsistency underscores the obvious point: Plaintiff visited the Website to manufacture litigation, not to engage in private communications with any reasonable expectation of privacy.[3] *See Byars*, 2023 WL 2996686, at *4.

Because Plaintiff's allegations fail to establish any concrete harm and any reasonable expectation of privacy, she lacks Article III standing. Accordingly, her claims should be dismissed under Rule 12(b)(1).

## II.    PLAINTIFF FAILS TO STATE A CLAIM.

### A.    Plaintiff's Consent Defeats Her Claims.

Even if Plaintiff could adequately plead the elements of her claims, they independently fail because she consented to the disclosed data practices.

Consent bars liability under Plaintiff's ECPA, CIPA, and intrusion upon seclusion claims. 18 U.S.C. § 2511(2)(d); Cal. Penal Code § 638.51(b)(5); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (consent bars common law claims). Where a website clearly discloses its data practices and provides users

---

[3] The FAC's incorrect allegation that the Website sells "skincare products" (FAC ¶ 22) confirms Plaintiff did not meaningfully engage with the Website and relies on generic allegations untethered to her.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

with meaningful choice, courts routinely find consent as a matter of law. *See Lakes v. Ubisoft*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025); *Perez v. Romantix Online, Inc.*, No. 25-CV-02465-NW, 2025 WL 3085786, at *3 (N.D. Cal. Oct. 27, 2025).

That reasoning applies here. Plaintiff alleges that a cookie banner appeared immediately upon visiting the Website and that she reviewed both the banner and the linked Privacy Policy. (FAC ¶¶ 25-29, 65-67, 83). Those admissions are dispositive.

The language of the CMP—which Plaintiff selectively omits from her pleading—clearly discloses that:

- "[T]o opt out of all cookies or broader sales/sharing …users must take additional steps through external privacy controls, including the privacy rights portal."
- "These controls only opt you out of targeted advertising and any sales/sharing related to targeted advertising."
- "The cookie preference tool is device and browser specific. If you delete or clear cookies or change devices or browsers, you may need to reset your cookie preferences."
- "You may opt out of all cookies/similar technologies (except those that are essential or functional)"

(Reilly Decl. ¶ 3).

These disclosures are neither buried nor obscure. They appear directly within the CMP, which Plaintiff affirmatively alleges she reviewed when she rejected non-essential cookies. (FAC ¶ 84). Plaintiff cannot plausibly claim ignorance of the very practices she now challenges.[4]

Courts confronting similar disclosures have found consent. In *Lakes*, the court dismissed CIPA and privacy claims where plaintiffs were notified via a cookie

---

[4] This is particularly true for Plaintiff, a self-described privacy "tester" presumed to understand basic privacy concepts.

- 12 -

Manatt, Phelps & Phillips, LLP
Attorneys at Law
San Francisco

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

banner and privacy policy that the website used third party tracking technologies and shared data with advertising and analytics partners. 777 F. Supp. 3d at 1058. Likewise, in *Washington v. Flixbus, Inc.,* the court found consent where the defendant disclosed its use of cookies and pixels, explained that some tracking would continue despite opt out selections, and provided tools to manage preferences. No. 3:25 CV 00212 H MSB, 2025 WL 1592961, at *4 (S.D. Cal. June 5, 2025).

Plaintiff's assertion that some cookies allegedly load before preference selection does not change the analysis. She alleges the banner appeared "immediately"—thereby providing notice of third-party cookie use—and that targeted advertising ceased after she exercised her preferences. (FAC ¶¶ 67, 83). Those allegations confirm the CMP operates exactly as disclosed: prospectively governing third-party tracking, not retroactively deleting all cookies. Such opt-out functionality is expressly permitted under the CCPA.

Nor do Plaintiff's allegations regarding reCAPTCHA salvage her claims. The CMP expressly discloses that essential and functional technologies remain enabled even when users reject targeted advertising cookies. (Reilly Decl. ¶ 3). Thus, the continued operation of such cookies cannot be nonconsensual. *See Flixbus*, 2025 WL 1592961, at *5.

Because Plaintiff consented to the challenged practices, all claims fail as a matter of law and dismissal is warranted.

### B.    Plaintiff's ECPA Claim Fails.

In Count I, Plaintiff asserts that Defendant violated ECPA, which prohibits the interception of certain communications. 18 U.S.C. § 2511(1). To state a claim under ECPA, Plaintiff must allege that Defendant "'intentionally intercept[ed] ... any wire, oral, or electronic communication' or 'intentionally disclose[d]' or 'use[d]' the contents of any such wire, oral, or electronic communication, while 'knowing or having reason to know that the information was obtained through the [unlawful]

- 13 -

interception.'" *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 683 (N.D. Cal. 2021) (internal citations omitted).

### 1.   The One-Party Consent Rule Bars the Claim Absent a Crime-Tort Exception.

ECPA expressly provides a "one-party consent" rule, permitting interception when the interceptor is a party to the communication or when one party consents to third-party interception. 18 U.S.C. § 2511(2)(d). Put simply, Defendant cannot be liable for intercepting communications to which it was a party. *Id.* Because Plaintiff cannot plead around this rule, Count I fails.

There is no dispute that the parties to the alleged "communications" were Plaintiff and Defendant. (*See, e.g.,* FAC ¶¶ 1, 22, 81, 92). Yet Plaintiff alleges that Defendant—a participant in the communication—somehow "intercepted" its own communications. (FAC ¶¶ 92-99). Courts have repeatedly rejected this theory. *See Roe v. Amgen*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) ("Plaintiffs' [ECPA] allegations are self-defeating … [the allegations are] only susceptible to an inference that Defendant, as the creator and operator of its website, consented to the use of data collection tools it installed").

This Court recently applied this rule in *Doe v. Talkiatry Mgmt. Services, LLC*, holding that the defendant website operator was a party to the communications and therefore exempt from ECPA liability. No. 5:25-cv-00781-SSS-DTBx, 2026 WL 206483, at *3 (C.D. Cal. Jan. 22, 2026) (Sykes, J.). That principle applies here. Defendant cannot be liable for intercepting communications that were sent directly to it through its own Website. *See id.*

Plaintiff attempts to sidestep the one-party consent rule by invoking the crime-tort exception (FAC ¶ 96), which negates consent where the interception was for the "purpose of *committing [a] ... tortious act* in violation of the . . . laws of the United States or any State." 18 U.S.C. § 2511(2)(d) (emphasis added). This exception is narrow and demanding, requiring facts showing that "the purpose for the

- 14 -

interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos., Inc.,* 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis added). This Court emphasized this reality in *Doe v. Talkiatry*, explaining that plaintiffs must allege facts supporting an inference that the defendant intercepted communications "for the purpose of committing a crime or tort" independent of the interception itself. 2026 WL 206483, at *3 (dismissing ECPA claim in second amended complaint with prejudice); *see also Doe v. Talkiatry Mgmt. Servs., LLC*, No. 5:25-cv-00781-SSS-DTBx, 2025 WL 3190813, at *4 (C.D. Cal. Oct. 1, 2025) (Sykes, J.) (dismissing ECPA claim in first amended complaint with leave to amend).

Plaintiff does not meet this standard. The FAC does not allege that Defendant deployed the third-party cookies *for the purpose* of committing a crime or tort. At most, Plaintiff alleges that Defendant enabled third-party cookies to collect data for commercial purposes. (FAC ¶¶ 21, 27, 76-80). Those allegations are insufficient to invoke the exception. Courts consistently hold that commercial or advertising motivation alone does not trigger the crime-tort exception. *Roe*, 2024 WL 2873482, at *6 (no exception where defendant's purpose was marketing and analytics); *Lakes*, 777 F. Supp. 3d at 1058 (exception inapplicable where interception was motivated by profit). Plaintiff alleges no other criminal or tortious purpose beyond vague assertions of financial gain. (FAC ¶¶ 21, 27, 76-80). Accordingly, Count I should be dismissed with prejudice.

### 2. Plaintiff Fails to Allege "Interception in Transit."

Separately, Count I fails because Plaintiff does not, and cannot, plausibly allege that Defendant collected her information "during transmission," as required by ECPA. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). As courts have recognized, "[g]iven the speed of [the Internet], [ECPA]'s application to that form of electronic communication is undoubtedly limited." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014). Plaintiff merely

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

asserts that "the interception occurred contemporaneously with the transmission of the communication." (FAC ¶ 94).  But reciting statutory language, without factual support, is insufficient to meet ECPA's pleading standard. *See Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1031 (N.D. Cal. 2014) (conclusory "interception" allegations dismissed). The FAC offers no facts showing contemporaneous interception—because none occurred. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("Plaintiffs must provide fair notice to Defendants when they believe [the third party] intercepts their communications.").

Courts applying both ECPA and CIPA § 631(a) uniformly hold that "in transit" means the communication must be intercepted during transmission—that is, before reaching its intended recipient. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021); *see Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 865 (C.D. Cal. 2024) (analyzing ECPA and CIPA identically). Once the data reaches its recipient, even momentarily, at that point "a communication becomes 'stored' and contemporaneous interception is no longer possible." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1077 (N.D. Cal. 2015); *Hernandez-Silva v. Instructure, Inc.*, No. 2:25-CV-02711-SB-MAA, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025) ("Learning the content of a communication after it has been sent is not eavesdropping.").

Plaintiff acknowledges that the third-party cookies analyze device data and "*once* the tracking script runs, it sends user data to the third party's server." (FAC ¶ 34) (emphasis added). Plaintiff concedes that, while information may be collected upon visiting the Website, it is accessed by third parties only after storage. (FAC ¶ 34); *see In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1077.

More problems surface in Plaintiff's claim that she was harmed by Defendant's alleged failure to delete cookies placed prior to her CMP selection.  Plaintiff admits that scripts "no longer fire on the Website" after selecting "Reject All." (*Id.* ¶ 67).

- 16 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

What actionable "transit" of information remains? Even if Plaintiff visited other websites, any tracking data would pass between those sites and their service providers—not Defendant's servers.

Because Plaintiff alleges no facts showing contemporaneous interception, her ECPA claim fails and should be dismissed.

### C.   Plaintiff's CIPA Section 638.51 Claim Fails.

#### 1.   CIPA Does Not Apply to Online Tracking Technologies.

Plaintiff's Count II claim fails because CIPA does not apply to the technology at hand. CIPA was enacted to "replac[e] prior laws that permitted the recording of telephone conversations with the consent of one party to the conversation." *Flanagan*, 27 Cal. 4th at 768-69. Although the Legislature has amended CIPA multiple times, including after the rise of the Internet, it has applied CIPA to online activity only when doing so expressly.

CIPA Section 638.51 ("Section 638.51") is no exception. Added in 2015 to extend CIPA to pen registers and trap-and-trace devices, *see* A.B. 929, 2015–2016 Reg. Sess. (Cal. 2015), it does not reference the internet or cookies, despite the widespread use of online tracking technologies at the time. Its plain text covers devices that capture dialing or routing information—not website activity. Cal. Pen. Code § 638.50(c).

The California Legislature has expressly covered online technologies by amending CIPA and enacting statutes that specifically regulate online consumer privacy. For example, the California Legislature "augmented the statutory scheme [of CIPA] in 1985, 1990, and 1992 'to take account of privacy issues raised by the increased use of cellular and cordless telephones.'" *See Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 191 (2021) (quoting *Flanagan*, 27 Cal.4th at 775-76). The Legislature also added section 632.01 to CIPA in 2017, punishing illegal eavesdroppers under section 632(a) who "intentionally discloses or distributes, in any manner, in any forum,

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

including, but not limited to, Internet Web sites and social media . . . the contents of a confidential communication with a health care provider . . . ." *See* Cal. Pen. Code § 632.01. In addition, while not part of CIPA, in 2019, the California legislature enacted the Comprehensive Computer Data Access and Fraud Act to "expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." *See* Cal. Pen. Code § 502(a).

In 2018, the legislature enacted the CCPA, a comprehensive privacy law that expressly applies to websites and Internet tracking technologies. (*See* Section I (Legislative History)). Plaintiff's interpretation of CIPA would undermine the CCPA by imposing an opt-in consent requirement for routine website tracking.[5] That approach would create an irreconcilable conflict with the CCPA, and where statutes cannot be harmonized, "the later and more specific statute usually controls the earlier and more general one." *Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992); *see also Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 949 (S.D. Cal. 2024) (declining to extend CIPA's plain language to internet communications).

The CCPA controls here—it postdates CIPA and specifically regulates the alleged online tracking.

### a.      The Rule of Lenity Applies to CIPA

Even if CIPA were ambiguous, the rule of lenity applies to this criminal statute. under California's rule of lenity, ambiguous criminal statutes are construed in the defendant's favor. *People v. Reynoza*, 15 Cal. 5th 982, 1012 (2024); *Harrott v. Cnty. of Kings*, 25 Cal. 4th 1138, 1154 (2001). Courts therefore need not speculate whether CIPA applies to third-party website tracking.

---

[5] Plaintiff asks the Court to supplant California's voter-approved CCPA with an EU-style opt-in regime. But California voters affirmatively chose a different approach when they enacted the CCPA. Nothing in CIPA authorizes a court to override that legislative and electoral judgment.

- 18 -

Manatt, Phelps & Phillips, LLP
Attorneys at Law
San Francisco

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

Enacted in 1967, CIPA "was not drafted with the internet in mind." *Doe v. Eating Recovery Ctr.*, 806 F. Supp. 3d 1109, 1115 (N.D. Cal. 2025). Where CIPA's language is ambiguous, lenity requires adopting the narrower interpretation. *Id.* at 1112; *Moss v. ResortPass Inc.*, No. 24CU023415C, 2025 WL 3452360, at *1 (Cal. Super. Ct. San Diego Oct. 30, 2025).

Accordingly, if Section 638.51 is ambiguous as to "trap and trace devices" or consent,[6] the Court should follow *Eating Recovery Ctr.* and decline to "contort [itself] to fit the type of conduct alleged into the language of a 1967 criminal statute about wiretapping." 806 F. Supp. 3d at 1119; *see Rodriguez v. Ink America Int'l Group LLC*, No. 25STCV15350, 2025 WL 4034985, at *3-4 (Cal. Super. Ct. Los Angeles Dec. 10, 2025) (applying rule of lenity and declining to extend Section 638.51 to routine website analytics rejecting an "expansive reading of CIPA" that would "criminaliz[e] web based analytical tools" and "seemingly render CCPA void").[7]

## 2.    The Third-Party Cookies Capture "Contents."

Even if CIPA applied, Plaintiff's claim hinges on an unworkable theory that the third-party cookies constitute "trap and trace devices" as defined by CIPA Section 638.50(c) to constitute a violation under Section 638.51. Under the plain text of the statute, those third-party cookies cannot be "trap and trace devices."

By definition, a "trap and trace device" captures "incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c) (emphasis added). Put another way, trap and trace devices "are tools which provide information about the 'who,' 'when,' and 'where' of communications—but

---

[6] "Consent" is not defined by CIPA, much less how the concept of consent might apply to website browsing. In the absence of any clarity on this question, the Court should apply the rule of lenity.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

not the 'what.'" *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Ct. Los Angeles Apr. 1, 2025) (granting Section 638.51 demurrer based on website's alleged use of the TikTok pixel).

Plaintiff nevertheless attempts to plead a Section 638.51 claim by alleging the third-party cookies function as trap and trace devices. (FAC ¶¶ 105-107). The FAC defeats that theory on its own terms.

Throughout the pleading, Plaintiff alleges that third-party cookies collect information reflecting the substance of her interactions with the Website, including URLs visited, HTTP requests, browsing history, and data generated by her online activity. (FAC ¶¶ 4, 32, 82, 92, 109). Courts consistently hold this information constitutes contents of a communication under CIPA. *See Mitchener*, 2025 WL 2272413, at *5 (device "fingerprinting" constitutes the contents of communications); *Kishnani,* 2025 WL 1745726, at *4 (same).

As *Mitchener* explains, software that tracks user behavior or builds activity profiles—rather than merely capturing routing information—collects communication contents as a matter of law and therefore falls outside Section 638.51. 2025 WL 2272413, at *5.

Confronted with this problem, Plaintiff attempts to reframe her allegations by asserting that "some" data, such as IP addresses and user-agent information, is non-content. (FAC ¶ 107). That reframing fails. Plaintiff cannot simultaneously allege that third-party cookies intercepted substantive information to support wiretapping claims while recasting the same conduct as mere non-content metadata to fit Section 638.51. *Kishnani*, 2025 WL 1745726, at *4. The statute does not permit such repackaging.

*Greenley v. Kochava, Inc.* underscores this distinction. There, the court—noting that CIPA "does not provide clarity on the definition of 'contents'"—held that data revealing a user's searches, app usage, and behavioral patterns constitutes

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

contents of a communication, not mere identifying information. 684 F. Supp. 3d 1024, 1051-52 (S.D. Cal. 2023). While California courts recognize that third-party collection of behavioral or activity-based information may be actionable under other sections of CIPA applicable to "the contents of a communication"—i.e., CIPA's wiretapping section 631—the plain text of CIPA is clear that such collection cannot be undertaken by a "trap and trace device" under Section 638.51. *Id.*

Plaintiff's allegations fall squarely into that former category. She alleges that third-party cookies collect information reflecting her website interactions and behavior—not merely device information (FAC ¶¶ 4, 32, 82, 92, 109).

Because the alleged conduct involves collecting communication contents, it cannot support a Section 638.51 claim.

### 3. Plaintiff Fails to Allege Any "Communication".

Further, Plaintiff fails to allege that she engaged in any qualifying "communication" to which Section 638.51 could apply.

As the Northern District of California recently explained in *D'Antonio v. Smith & Wesson Inc.*, CIPA claims fail absent allegations that plaintiffs personally engaged in communications whose routing or signaling information was captured. No. 25-cv-03085-PCP, 2026 WL 446310, at *4-*5 (N.D. Cal. Feb. 17, 2026). There, the court dismissed Section 638.51 claims because plaintiffs alleged only that they visited a website—not any communication generating dialing, routing, addressing, or signaling data. *Id.* at *5.

The same defect exists here. Plaintiff alleges, at most, that she visited the Website. (FAC ¶ 81). She does not allege that she submitted information, transmitted inputs, completed forms, or otherwise engaged in any communication whose routing or signaling information was captured. Generalized allegations about cookies operating on "Website users" do not substitute for plaintiff-specific allegations of actual communication. *See D'Antonio*, 2026 WL 446310, at *4 ("In the absence of

- 21 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

any allegation that plaintiffs themselves communicated with the website, they cannot allege that dialing, routing, addressing, or signaling information relating to any such communication was tracked.").

Without a pleaded communication, there is nothing for a trap-and-trace device—even if one existed—to capture. Plaintiff's Section 638.51 claim should be dismissed.

### D.    Plaintiff's Intrusion Upon Seclusion Claim Fails.

Plaintiff's Count III claim for intrusion upon seclusion fails for myriad reasons. "To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy [,]' and (2) that the intrusion 'occur[red] in a manner highly offensive to a reasonable person.'" *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024). Plaintiff does not meet either element.

### 1.    Plaintiff Cannot Assert a Reasonable Expectation of Privacy.

A "reasonable" expectation of privacy is an objective entitlement grounded in widely accepted community norms. *Hill v. NCAA*, 7 Cal. 4th 1, 37 (1994). Plaintiff fails to establish such an expectation based on a single visit to the Website—an interaction she likely initiated to bring this suit. (FAC ¶ 81); *Byars*, 2023 WL 2996686, at *1. Courts routinely hold that voluntarily engaging with a commercial website defeats any reasonable expectation of privacy. See *Thomas v. Papa Johns Int'l, Inc.*, No. 22cv2012 DMS (MSB), 2024 WL 2060140, at *5 (S.D. Cal. May 8, 2024), aff'd, No. 24-3557, No. 24-3834, 2025 WL 1704437 (9th Cir. June 18, 2025); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021).

Plaintiff's own allegations reinforce that conclusion. She concedes that a cookie banner appeared immediately upon entry, disclosing the use of third-party cookies. (FAC ¶ 83; Reilly Decl. ¶ 3). Such notice defeats any reasonable belief that

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 22 -

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

tracking was not occurring before preference selection. *See Saleh*, 562 F. Supp. 3d at 525.

As discussed in Section I, *supra*, Plaintiff does not allege collection of sensitive information—only routine technical and browsing data. Courts consistently hold that such data does not implicate a reasonable expectation of privacy. *See Thomas*, 2024 WL 2060140, at *5; *Esparza*, 723 F. Supp. 3d at 947.

Finally, Plaintiff concedes that tracking ceased after she rejected cookies. (FAC ¶ 67). Given Defendant honored her preferences, Plaintiff cannot plausibly allege an intrusion.

**2. Plaintiff Fails to Allege Highly Offensive Conduct**

Even if Plaintiff could show a reasonable expectation of privacy, her claim fails because she does not allege conduct that is "highly offensive to a reasonable person." *Hill*, 7 Cal. 4th at 37. This element requires egregious, intrusive conduct—not routine commercial data collection or technical noncompliance. *Esparza*, 723 F. Supp. 3d at 947.

Plaintiff alleges no misuse of data, no disclosure of sensitive or confidential information, and no individualized harm. Instead, the FAC relies on vague, conclusory assertions about how third parties could hypothetically use browser data. (FAC ¶¶ 20-21, 69, 76-80). Plaintiff does not allege that Defendant accessed her own sensitive information or exploited her data in a manner that could plausibly be deemed highly offensive. *See Maghoney*, 2026 WL 497402, at *5. Courts routinely hold the collection or disclosure of routine commercial information is not a highly offensive intrusion. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Plaintiff's failure to allege a truly offensive intrusion warrants dismissal of Count III.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 23 -

## CONCLUSION

Based on the foregoing, Defendant respectfully requests the Court to dismiss Plaintiffs' claims with prejudice.

Dated: March 13, 2026              MANATT, PHELPS & PHILLIPS, LLP


                                   By:    *s/ Brandon P. Reilly*
                                        Brandon P. Reilly
                                        Emily V. Whitely
                                        Attorneys For Defendant,
                                        Anschutz Entertainment Group, Inc.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

The undersigned, counsel of record for Defendant Anschutz Entertainment Group, Inc., certifies that this brief contains 6,995 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 13, 2026              MANATT, PHELPS & PHILLIPS, LLP


By:   *s/ Brandon P. Reilly*
      Brandon P. Reilly
      Attorneys For Defendant,
      Anschutz Entertainment Group, Inc.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSCHUTZ ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FAC;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-2282