**MANATT, PHELPS & PHILLIPS, LLP**
BRANDON P. REILLY (Bar No. CA 278012)
BReilly@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: 916.552.2300
Facsimile: 916.552.2323

EMILY V. WHITELY (*Pro Hac Vice*)
EWhitely@manatt.com
7 Times Square
New York, NY 10036
Telephone: 212.790.4500

*Attorneys for Defendant*
ANSCHUTZ ENTERTAINMENT GROUP, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SILVIA GARCIA,<br>Plaintiff,<br>v.<br>ANSCHUTZ ENTERTAINMENT GROUP, INC., a Colorado corporation, d/b/a WWW.SHRINEAUDITORIUM.COM,<br>Defendant. | Case No.: 5:25-cv-02282-SSS-DTB<br>Assigned to Hon. Sunshine S. Sykes<br>**DEFENDANT ANSCHUTZ ENTERTAINMENT GROUP, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br>Date: May 1, 2026<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Complaint Filed: September 2, 2025<br>Trial Date None Set |

# TABLE OF CONTENTS


Page

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. PLAINTIFF LACKS ARTICLE III STANDING. .......... 1

A. Plaintiff Fails to Allege Any Concrete, Particularized Injury. .......... 2

B. Plaintiff's Status as a "Tester" Underscores the Absence of a Cognizable Privacy Injury. .......... 3

C. Plaintiff's "Deceit" Theory Does Not Establish Standing. .......... 4

D. That the Information Constitutes "Personal Information" Under the CCPA Does Not Establish Standing. .......... 5

II. PLAINTIFF FAILS TO STATE A CLAIM. .......... 6

A. The Rule of Lenity Applies to CIPA. .......... 6

B. Plaintiff Does Not Explain How Her Allegations are Compatible with CIPA § 638.51. .......... 9

C. Plaintiff Concedes That Her Federal Wiretap Act Claim Fails. .......... 10

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ardente, Inc. v. Shanley*,
No. C 07-4479 MHP, 2010 WL 546485
(N.D. Cal. Feb. 10, 2010) .......... 5, n., 10

*Bittner v. United States*,
598 U.S. 85 (2023) .......... 8

*Byars v. Sterling Jewelers, Inc.*,
5:22-cv-01456-SB-SP, 2023 WL 2996686
(C.D. Cal. Apr. 5, 2023) .......... 3

*CREEC v. Hospitality Props. Trust*,
867 F.3d 1093 (9th Cir. 2017) .......... 3

*Dawidzik v. Tesla, Inc.*,
No. EDCV 25-01982-KK-SPx, 2025 WL 3786963
(C.D. Cal. Dec. 29, 2025) .......... 2

*Fed. Election Comm'n v. Cruz*,
596 U.S. 289 (2022) .......... 3

*Harrott v. County of Kings*,
25 Cal. 4th 1138 (2001) .......... 8

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) .......... 3

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726
(N.D. Cal. June 24, 2025) .......... 9

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023) .......... 3

*Magliocca v. United Healthcare Services, Inc.*,
No. 2:25-CV-3388 WBS SCR, 2026 WL 878694
(E.D. Cal. Mar. 31, 2026) .......... 6

*Mitchener v. CuriosityStream, Inc.*,
No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .......... 9

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-CV-03647-JSC, 2025 WL 3268404
(N.D. Cal. Nov. 24, 2025) .......... 5

## TABLE OF AUTHORITIES
(continued)

**Page**

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ........ 1, 6

*Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ........ 3, 4

*Rodriguez v. Brushfire Recs.*, No. 2:25-CV-09797-CAS-PDx, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ........ 2

*Shah v. Politico LLC*, No. 25-CV-05213-NW, 2026 WL 323269 (N.D. Cal. Feb. 6, 2026) ........ 5

*Silvia Garcia v. Blackhawk Network, Inc.*, No. 2:25-CV-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ........ 2, 5

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ........ 4

*Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 4

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........ 2, 5, 6

*Wiley v. Universal Music Grp., Inc.*, No. 25-CV-03095-PCP, 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ........ 5

*Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139 (E.D. Cal. 2025) ........ 6

## STATUTES & RULES

Cal. Civ. Code § 1798.100, *et seq.* ........ 4, 5, 6

Cal. Penal Code § 630, *et seq.* ........ 9

Fed. R. Civ. P. 9(b) ........ 5, n.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff's Opposition does not explain or save the First Amended Complaint's ("FAC") defects. Dismissal is warranted for multiple independent reasons, none of which Plaintiff meaningfully rebuts.

First, Plaintiff lacks Article III standing. She does not explain how the FAC alleges that she personally suffered a concrete, particularized injury from any actual data collection on Defendant's Website; instead, she relies on generalized assertions about routine online tracking tied to a single, litigation-motivated visit. She does not distinguish any of the allegedly collected information from that considered by the Ninth Circuit and other courts as insufficient to confer standing. Her allegations are thus insufficient as a matter of law and this case should resolve no differently than the Ninth Circuit's outcome in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025).

Second, Plaintiff's claims fail on the merits. She seeks to extend CIPA—a 1967 criminal wiretapping statute—to routine website analytics and cookies, despite recognized ambiguities that must be resolved narrowly under the rule of lenity. Plaintiff also fails to plausibly allege an interception of any communication's contents, and she does not respond to Defendant's arguments for dismissal of her Federal Wiretap Act claim—effectively abandoning it. For these reasons, and for the reasons set forth in Defendant's Opening Brief, the Court should dismiss the FAC with prejudice.

## ARGUMENT

### I. PLAINTIFF LACKS ARTICLE III STANDING.

Plaintiff's Opposition does not meaningfully engage with the threshold jurisdictional defect identified in Defendant's Opening Brief ("Mem."). Specifically, Plaintiff does not explain why her failure to allege what specific information was collected from her should meet the Article III standard. Nor does she explain why other websites' alleged tracking technologies are relevant to her purported injury. Her abstract, boilerplate descriptions of hypothetical data collection are not enough. *See*

*Popa*, 153 F.4th at 792-94.

Plaintiff's additional arguments regarding her status as a "tester," alleged notice defects, and asserted expectations of privacy do not salvage standing. At most, they attempt to repackage abstract allegations to fit individualized harm, but none plausibly allege the concrete injury Article III requires.

**A. Plaintiff Fails to Allege Any Concrete, Particularized Injury.**

Article III requires a plaintiff to allege a concrete and particularized injury—one that reflects a "personal stake" in the alleged harm. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Where, as here, the asserted harm is intangible, the plaintiff must allege an injury that bears a close relationship to a traditionally recognized privacy harm. *Id.* at 424.

The FAC does not do so. Plaintiff does not allege that the purported collection of her information caused her any tangible or intangible consequence. She alleges no downstream effect or individualized impact. At most, she contends that certain categories of metadata may have been collected during a single Website visit. (FAC ¶¶ 81, 114; *see* Mem. at 8-10). Courts consistently hold that such abstract allegations—untethered from any concrete harm to Plaintiff herself—are insufficient to establish standing. *See, e.g., Rodriguez v. Brushfire Recs.,* No. 2:25-CV-09797-CAS-PDx, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025); *Dawidzik v. Tesla, Inc*., No. EDCV 25-01982-KK-SPx, 2025 WL 3786963, at *4 (C.D. Cal. Dec. 29, 2025).

Plaintiff's Opposition never explains how she, in particular, was injured. That failure alone is dispositive. *See Silvia Garcia v. Blackhawk Network, Inc.,* No. 2:25-CV-07550-JLS-SSC, 2026 WL 925028, at *5-*6 (C.D. Cal. Apr. 1, 2026) (dismissed for lack of particularized harm); *Brushfire Recs.*, 2025 WL 3692144, at *6-*7 (same).

This is not the first time that Plaintiff has attempted such allegations and failed to state a claim. In *Garcia v. Blackhawk*, the court rejected nearly identical arguments from Ms. Garcia, dismissing her claims because she failed to allege a concrete and particularized injury arising from a single Website visit involving the collection of

metadata. 2026 WL 925028, at *5-*6. The same result is warranted here, where Plaintiff again fails to plead any individualized harm. (*See* Mem. at 8-10).

**B. Plaintiff's Status as a "Tester" Underscores the Absence of a Cognizable Privacy Injury.**

Plaintiff devotes many pages of her Opposition to defend her status as a privacy "tester," the entirety of which mischaracterizes Defendant's argument as asserting that testers can *never* have standing. (Opp. at 1-4). That is not Defendant's position. Rather, Plaintiff's admitted status as a privacy "tester" undermines any plausible allegation of a concrete privacy injury because it necessarily reduces her reasonable expectation of privacy. (*See* Mem. at 10-11).

Plaintiff alleges that she visited Defendant's Website for the express purpose of testing it for alleged privacy violations. (FAC ¶ 81). Where a plaintiff anticipates monitoring or data collection and seeks it out to pursue litigation, courts routinely hold that she cannot plausibly allege an invasion of privacy sufficient to confer standing. *See Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025); *Byars v. Sterling Jewelers, Inc.*, 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3, n.4 (C.D. Cal. Apr. 5, 2023).[1]

Plaintiff's reliance on tester-plaintiff cases brought under the First Amendment, the ADA, and the Fair Housing Act misses the mark. Those cases involve concrete access barriers that exist regardless of a plaintiff's expectations or motive. *See Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296-97 (2022); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982); *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023); *CREEC v. Hospitality Props. Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017).[2] Plaintiff's allegations are readily distinguishable. Privacy claims are inherently

---

[1] Plaintiff attempts to relitigate *Autotrader.com* by arguing that it conflicts with Ninth Circuit law. (Opp. at 3). That argument is unpersuasive and fails to address the core defect: as a tester, Plaintiff cannot plausibly allege a reasonable expectation of privacy.

[2] Plaintiff's attempt to analogize CIPA claims to ADA claims is beside the point and has no bearing on the reasonable-expectation-of-privacy analysis required here.

expectation-based. Where a plaintiff expects the very conduct she challenges, she cannot plausibly claim a concrete privacy injury from its occurrence. *See Autotrader.com*, 2025 WL 1085787, at *1.

**C. Plaintiff's "Deceit" Theory Does Not Establish Standing.**

Plaintiff attempts to manufacture standing by arguing that Defendant's Notice at Collection was not "conspicuous" under a completely different law—the California Consumer Privacy Act ("CCPA"). (Opp. at 11-12). That argument is not only incorrect, but does nothing to cure Plaintiff's standing defect.

Plaintiff, of course, did not plead a CCPA claim. To the extent Plaintiff is attempting to allege non-compliance with a statutory notice regime, such allegation is no substitute for the concrete injury required by Article III. *See Spokeo, Inc. v. Robins,* 578 U.S. 330, 334 (2016) (particularized injury is required for statutory harm).

In any event, Plaintiff's arguments are contradicted by her own allegations and materials properly considered on a motion to dismiss. Plaintiff does not dispute that Defendant disclosed the placement of third-party cookies and provided a functioning opt-out mechanism. (FAC ¶¶ 63-67). Defendant's cookie banner appears immediately upon Website entry and expressly informs users that Defendant may use third-party tracking technologies. (FAC ¶¶ 63-66). It then provides clear, affirmative options to choose privacy preferences, linking to a Privacy Center with further disclosures and functioning opt-out mechanisms. (*Id.* ¶¶ 65-66; ECF No. 24-2, Reilly Decl., Ex. A). These disclosures are neither buried nor obscure. (Mem. at 11-12).

Where a defendant discloses data collection, identifies third-party cookies, and provides an immediate opt-out—which Plaintiff confirms here—no reasonable expectation of privacy exists as a matter of law. *See Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *5, n. 3 (S.D. Cal. May 8, 2024) (defendant's privacy policy warned of third-party cookie use, defeating any reasonable expectation of privacy). Citing to the CCPA does not change that result, particularly where, as here, the CCPA's notice and opt-out requirements are met.

Further, Plaintiff's argument that she was somehow "deceived" is belied by her own FAC, which does not plead fraud or misrepresentation.[3] (Opp. at 4-6). The new "deceit" arguments do not alter the standing analysis where disclosures are conspicuous and acknowledged by the user. Courts consider "deceit" only where disclosures are concealed or misleading—which is not the case here.

Plaintiff's own authorities underscore the point. Each involves allegations that defendants ignored users' privacy choices or continued tracking after opt-out—facts Plaintiff does not—and cannot—allege here. *See Wiley v. Universal Music Grp., Inc.,* No. 25-CV-03095-PCP, 2025 WL 3654085, at *6 (N.D. Cal. Dec. 17, 2025) (defendant disregarded plaintiff's privacy choices after opting out); *Shah v. Politico LLC,* No. 25-CV-05213-NW, 2026 WL 323269, at *4 (N.D. Cal. Feb. 6, 2026) (same); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-03647-JSC, 2025 WL 3268404, at *4 (N.D. Cal. Nov. 24, 2025) (same). To the contrary, Plaintiff affirmatively alleges that Defendant's CMP functioned as disclosed and that the tracking technologies "no longer fire[d] on the Website" when "Reject All" was selected. (FAC ¶ 67). That is not deception.[4]

Plaintiff also fails to allege reliance on or any concrete harm flowing from the purported notice defect. Although she asserts that certain cookies were placed before she selected "Reject All," she pleads no specific facts describing her own experience or explaining how that alleged timing caused her any injury. Alleged procedural defects, standing alone, cannot confer Article III standing. *See TransUnion,* 594 U.S. at 440; *Garcia*, 2026 WL 925028, at *5-*6.

**D. That the Information Constitutes "Personal Information" Under the CCPA Does Not Establish Standing.**

Contrary to Plaintiff's assertion, whether the alleged data qualifies as "personal

---

[3] For the Court to even consider fraud-based claims, Plaintiff's allegations must—and do not—satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

[4] Plaintiff's failure to address Defendant's argument regarding the lack of harm from the alleged "bypassing" of the CMP constitutes abandonment of that allegation. (Mem. at 9-10; *see Ardente, Inc. v. Shanley,* No. C 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010) (failure to address an argument constitutes concession)).

information" under the CCPA does not resolve the standing inquiry. The question is whether Plaintiff has alleged a concrete intrusion on a reasonable expectation of privacy that is highly offensive to a reasonable person. *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1144 (E.D. Cal. 2025).

Here, Plaintiff appears to contend that routine metadata and an IP address were collected during a single Website visit. (FAC ¶¶ 81, 114).[5] Contrary to Plaintiff's assertions (Opp. at 7), courts have held that such information is not sufficiently "embarrassing, invasive, or otherwise private" to constitute a concrete privacy injury. *See, e.g., Popa*, 153 F.4th at 791; *Magliocca v. United Healthcare Services, Inc.,* No. 2:25-CV-3388 WBS SCR, 2026 WL 878694, at *4 (E.D. Cal. Mar. 31, 2026) (allegations of collecting "button clicks, page visits, scrolls, session lengths, URLs, and IP addresses" were insufficient to establish standing).

Plaintiff alleges neither sensitive data nor pervasive, invasive tracking. Her Opposition confirms as much by failing to articulate any actual harm. That alone defeats any claim of a highly offensive intrusion under *TransUnion* and *Popa*. Plaintiff therefore lacks Article III standing and her claims must be dismissed.

## II. PLAINTIFF FAILS TO STATE A CLAIM.

Plaintiff's Opposition does not salvage the merits of her claims.

### A. The Rule of Lenity Applies to CIPA.

As Defendant explained in its Opening Brief, CIPA was enacted in 1967 to prevent wiretapping and eavesdropping on telephone and telegraph communications. Its language reflects that historical context and does not map cleanly onto modern internet activity. (*See* Mem. at 17-19; *Eating Recovery Ctr.*, 806 F. Supp. 3d 1109, 1114 (N.D. Cal. 2025)).

Even the threshold question of CIPA's application to website analytics, cookies, and third-party tracking technologies is deeply uncertain. One court in the Northern

[5] Defendant does not contest that this information typically constitutes "personal information" under the CCPA. (*See* Cal. Civ. Code 1798.140(v).) That question is immaterial to the standing inquiry.

District of California has put the point bluntly: CIPA's text is "a total mess" when applied to online technologies, and it is "often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute." *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1112. The rule of lenity has clear application to the present allegations and should be followed here.

Plaintiff does not meaningfully engage with this problem.[6] Instead, she simply asserts that CIPA applies to "internet communications," without identifying any statutory text supporting that assertion. (Opp. at 17-18). That omission is telling. Unlike modern privacy statutes, CIPA contains no reference to websites, cookies, analytics tools, or third-party tracking technologies. (Mem. at 17-18).

Unable to anchor her position in CIPA's text, Plaintiff confusingly asserts that CIPA's legislative intent can be "fairly discern[ed]" by pointing to legislative history associated with the federal U.S. PATRIOT Act. (Opp. at 17-18). But the PATRIOT Act is a federal antiterrorism statute enacted decades after CIPA in response to national security concerns. It has no bearing on the meaning or scope of CIPA. Legislative history from an unrelated federal statute cannot supply clarity where the text of a state criminal statute is ambiguous.

Even assuming, arguendo, that CIPA can apply in *some circumstances* to internet-based conduct, that assumption only underscores the statute's ambiguity—not its clarity. *Eating Recovery Ctr.* identifies a host of unresolved questions that courts continue to question in applying CIPA to online conduct, including:

- What it means to "read" or "learn" a communication through automated data processing;
- What qualifies as the "contents" of an online communication;
- When an internet communication is "in transit";

---

[6] Plaintiff declines to discuss or even cite to any of the authorities included in Defendant's Opening Brief on this topic. (*Compare* Mem. at 17-19 *with* Opp. 17-18). Her lone mention of *Rodriguez v. Ink America* is provided in the context of discussing the reasonable expectation of privacy, and at any rate, does not address the rule of lenity. (*See* Opp. 14).

- Whether a communication remains "in transit" after reaching its intended recipient; and
- Whether a 1967 wiretapping statute can coherently be applied to modern tracking technologies at all.

806 F. Supp. 3d at 1112-15.

The existence of these questions confirms that CIPA is not unambiguous as applied to internet tracking technologies. To the contrary, *Eating Recovery Ctr.* observed that courts have reached conflicting conclusions on these issues and that companies have "no way of telling whether their online business activities will subject them to liability." *Id.* at 1112.

Plaintiff's citations to cases noting that CIPA may apply in some internet contexts do not resolve this problem. (Opp. at 17-18). As the *Eating Recovery Ctr.* court explained, "[o]ne could imagine an interpretation under which the website operator would be liable," but ambiguity remains—especially where an equally reasonable interpretation avoids liability. 806 F. Supp. 3d at 1112.

Where a statute imposes criminal liability and punitive civil penalties, California courts apply the rule of lenity even in civil cases. *Harrott v. County of Kings*, 25 Cal. 4th 1138, 1154 (2001). Courts likewise narrowly construe civil statutes that carry punitive penalties. *Bittner v. United States*, 598 U.S. 85, 103 (2023) ("the rule of lenity, not to mention a dose of common sense, favors a strict construction.").

The principle is straightforward and controls here: courts do not expand criminal or punitive statutes absent clear legislative intent. Given CIPA's acknowledged ambiguity and the Legislature's failure to modernize it, the Court should adopt the narrower, equally reasonable interpretation. *See Eating Recovery Ctr.,* 806 F. Supp. 3d at 1118.

Plaintiff's unsupported assertions that CIPA is not ambiguous cannot be reconciled with the statutory text, its history, or the growing body of case law recognizing the difficulty of applying a 1967 wiretapping statute to modern internet

technologies. *See id.* at 1112. Because CIPA is, at minimum, ambiguous as applied here, the rule of lenity applies and independently bars Plaintiff's expansive reading of the statute.

**B. Plaintiff Does Not Explain How Her Allegations are Compatible with CIPA § 638.51.**

As demonstrated in the Opening Brief, Plaintiff's claim under California Penal Code § 638.51 ("Section 638.51") fails to meet the statute's basic definitions. (Mem. at 19-21). Section 638.51 applies only to pen registers and trap-and-trace devices—devices that capture dialing, routing, addressing, or signaling information—but not the contents of a communication. Cal. Penal Code §§ 638.50(b)-(c), 638.51. Plaintiff's own allegations place the challenged conduct outside that framework.

Throughout the FAC, Plaintiff alleges that Defendant and third parties intercepted or learned the substance and meaning of her communications, not merely non-content metadata. (FAC ¶¶ 1, 4, 20, 22, 35, 69, 82, 92, 114, 117). Those allegations are incompatible with Section 638.51, which expressly excludes content collection. *See Mitchener v. CuriosityStream, Inc.,* No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) ("fingerprint[ing]" allegations are content under Section 638.51); *Kishnani v. Royal Caribbean Cruises Ltd.,* No. 25-CV-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (same). Section 638.51 turns on the type of data collected, and allegations of content collection defeat a pen-register claim. (Mem. at 19-21).

Even assuming Plaintiff could characterize her allegations as similar to those in *Doe v. Talkiatry Management Services LLC*, that decision does not carry her Section 638.51 claim here. No. 5:25-CV-00781-SSS-DTBX, 2026 WL 206483, at *4 (C.D. Cal. Jan. 22, 2026). In *Talkiatry*, the Section 638.51 claim survived because the complaint alleged the capture of location data—a discrete category of non-content, routing-type information that the court treated as potentially within the statute's scope at the pleading stage. *Id.*

Plaintiff's allegations here go well beyond that. She does not confine her Section 638.51 theory to geolocation or other routing/signaling information. Instead, she alleges the collection of broader user data tied to the substance of her Website activity. (FAC ¶¶ 1, 4, 20, 22, 35, 69, 82, 92, 114, 117). Among the types of user data that Plaintiff alleges is collected is (1) "browsing history," including "titles," "keywords" and "navigation patterns"; (2) "website interactions," including "which links, buttons, or ads…that a user clicks"; (3) "user input data," including any information a user enters into form fields; (4) "demographic information"; and (5) "shopping behavior," including "products viewed or added to shopping carts." (*Id.* ¶ 20). Section 638.51 is expressly limited to devices that capture dialing, routing, addressing, or signaling information and not the contents of communications. Extending *Talkiatry* to a content-adjacent theory would collapse the statutory framework this Court preserved. *See* 2026 WL 206483, at *4. Plaintiff's own allegations place the conduct outside Section 638.51, requiring dismissal.

**C. Plaintiff Concedes That Her Federal Wiretap Act Claim Fails.**

Finally, Plaintiff does not respond to Defendant's arguments for dismissal of her Federal Wiretap Act claim, thereby conceding the issue. *See, e.g., Ardente,* 2010 WL 546485, at *7 ("Plaintiff fails to respond to this argument and therefore concedes it.").

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court dismiss Plaintiff's claims with prejudice.

Dated: April 17, 2026

MANATT, PHELPS & PHILLIPS, LLP

By: *s/ Brandon P. Reilly*
Brandon P. Reilly
Emily V. Whitely
*Attorneys For Defendant,*
ANSCHUTZ ENTERTAINMENT GROUP, INC.