UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:25-cv-02282-SSS-DTBx | Date | May 5, 2026 |
|---|---|---|---|
| Title | *Silvia Garcia v. Anschutz Entertainment Group, Inc.* | | |

Present: The Honorable    SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE [DKT NO. 24]**

Before the Court is Defendant Anschutz Entertainment Group, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint. [Dkt. No. 24]. The Motion is fully briefed and ripe for review. [Dkt. No. 24, "Motion"; Dkt. No. 25, Opposition or "Opp."; Dkt. No. 26, "Reply"]. Defendant has also submitted a Request for Judicial Notice in connection with the Motion. [Dkt. No. 20-4, "Request for Judicial Notice" or "Request"].

Having considered the parties' arguments, relevant legal authority, and record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion, and **GRANTS** Defendant's Request for Judicial Notice.

## I.    BACKGROUND

Defendant Anschutz Entertainment Group Inc. ("AEG") is a California-based operator of sports and live entertainment venues and sells tickets to consumers across the country through its website and other third-party websites. [Dkt. No. 20 ¶6, "First Amended Complaint" or "FAC"; Motion at 13]. According

to the FAC, AEG programs its website with third-party resources that uses cookie trackers to "collect Website users' personal information, such as their browsing activities and private communications with Defendant." [FAC ¶¶ 14, 20]. Individuals, through visiting AEG's website, can unknowingly provide information that triggers detection by pixels or trackers. [*Id.* ¶ 20]. Upon detecting information, these pixels or trackers collect the information and then create profiles that serve commercial purposes. [*Id.*].

This case arises out of AEG's alleged collection of "information about Plaintiff's device and Plaintiff's interactions with the Website the moment that Plaintiff landed on the Website." [FAC ¶ 81]. The Court cites the facts as alleged in the FACC.

In August of 2025, Plaintiff visited AEG's website for the Shrine Auditorium for information about AEG's products and services. [FAC ¶ 81]. Plaintiff maintains that she was "genuinely interested in the products, services, and information available on Defendant's Website" despite identifying as a "consumer privacy advocate who works as a 'tester.'" [*Id.*].

Upon landing on the site, the FAC alleges "third party cookies began to collect information about Plaintiff's device and Plaintiff's interactions with the Website" instantaneously. [FAC ¶ 82]. Plaintiff, however, was also "immediately presented" with Defendant's pop-up cookie consent banner, through which she rejected non-essential cookies. [*Id.* ¶¶ 83–84]. Plaintiff believed that her selection through this consent manner "gave Defendant notice that she did not consent to the use or placement of non-essential cookies and tracking technologies while browsing the Website." [*Id.* ¶ 85].

Unbeknownst to Plaintiff, Defendant had nonetheless exposed Plaintiff to cookies and tracking technologies which then transmitted her user data to third-parties. [FAC ¶ 86]. In particular, the FAC alleges that Defendant's conduct thus caused collection and transmission of Plaintiff's "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data." [*Id.* ¶ 117].

Plaintiff filed suit on behalf of herself and similarly situated individuals on September 2, 2025. [*See* Dkt. No. 1]. On February 6, 2026, Plaintiff filed a First Amended Complaint. [Dkt. No. 20, "First Amended Complaint" or "FAC"]. The FAC alleges violations of the Federal Wiretap Act, the California Invasion of Privacy Act, and a common law claim of intrusion upon seclusion. [*See generally*

*id.*].  Defendant filed this Motion on March 13, 2026, seeking to dismiss all claims in the FAC.  [*See* Motion].

Defendant's Motion argues that Plaintiff's claims are not legally viable for lack of Article III standing as for failure to state a claim upon which relief can be granted.  [*See generally* Motion].

For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.

## II.     REQUEST FOR JUDICIAL NOTICE

Defendant requests that the Court take judicial notice of Exhibit A: the cookie management platform ("CMP") that is displayed on the AEG's website from on or around August 2025.  [Request at 2–4]. Plaintiff's Opposition does not include any opposition to the Request.

Federal Rule of Evidence 201 permits a court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b). Each of the documents and the particular facts for which Defendants seeks judicial notice "can be accurately and readily determined from sources who accuracy cannot be questioned."  Courts routinely take judicial notice of publicly accessible websites and their contents, provided a copy of the webpage is supplied.  *See Asner v. SAG-AFTRA Health Fund*, 557 F. Supp. 3d 1018, 1024 (C.D. Cal. 2021) (judicial notice appropriate for documents on publicly available websites).

Because Plaintiff appears to rely on the contents of Exhibit A in the FAC and has failed to object to it, the Court **GRANTS** the Request as to Exhibit A.

## III.    LEGAL STANDARD

### A.     Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss an action under Federal Rule 12(b)(1) seeks to dismiss for lack of subject matter jurisdiction.  Lack of Article III standing is a lack of subject matter jurisdiction.  To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*,

594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. *Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000).

## B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. A district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV.    DISCUSSION

Defendant challenges each of Plaintiff's claims, arguing that Plaintiff either fails to state a claim upon which relief can be granted or does not properly allege necessary elements.  [Motion at 19–31].  However, Defendant also suggests that Plaintiff neither presents a concrete injury nor possesses Article III standing due to her status as a privacy "tester."  [*Id.* at 16–19].

Before considering the arguments touching on the merits of Plaintiff's claims, the Court first discusses Article III standing.

### A.    Article III Standing

Defendant identifies two arguments to suggest Plaintiff lacks Article III standing: (1) her lack of a concrete injury, and (2) her status as a "tester."  [Motion at 16–19].  In doing so, Defendant relies on *Popa v. Microsoft Corporation* to suggest her suit presents only "abstract statutory violations without real-world harm," and additionally questions whether Plaintiff may maintain an invasion of privacy claim if she anticipated some data collection.  [*Id.* at 16, 18].  *See Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025).

### 1.    Concrete Injury

In the Ninth Circuit, whether Plaintiff suffered an injury sufficient for Article III standing depends on the sensitivity of the information exposed.  *Morales v. Conifer Revenue Cycle Sols., LLC*, No. 2:23-CV-01987-AB, 2025 WL 1096396, at *4 (C.D. Cal. Mar. 31, 2025) ("In the Ninth Circuit, whether a data breach is likely to cause 'real and immediate harm' rather than just 'conjectural or hypothetical' harm turns on the kinds of data breached.");  *see also, e.g., In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018) (stolen data, which included account numbers, passwords, and credit card information, was sufficiently sensitive to give rise to standing based on threat of identity theft); *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 301–03 (2d Cir. 2021) (collecting cases across circuits and identifying key factors to assess risk of harm from data breach, including the sensitivity of the data exposed).  Thus, the Court must examine each Plaintiff's allegations separately to determine standing.

The FAC alleges that Plaintiff experienced the following harms: (1) third-party cookies from AEG's website "began to collect information about Plaintiff's device and [her] interactions with the Website" without her consent and despite her choice to reject all cookies through a cookie consent banner; and (2) Defendant

intercepted her electronic communications such that Plaintiff lacked any choice in whether third-party cookies were placed on her device such that her user data would be transferred.  [FAC ¶¶ 82, 84, 86, 98, 108].  The specific kind of Plaintiff's data collected includes her "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data."  [FAC ¶ 117].  In other words, Plaintiff lost her ability "to control information about [her]self and to avoid the broad dissemination of that information."  *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 WL 247875 at *2 (N.D. Cal. Jan. 29, 2026) (internal quotation marks omitted).

Although all of Plaintiff's information that was collected and transmitted may not be considered sensitive, caselaw supports that at least some of Plaintiff's data is sensitive enough to support Article III injury-in-fact.  *See, e.g.*, *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 WL 2939229, at *10 (N.D. Cal. Oct. 16, 2025) (identifying individual's browsing history and similar information as sufficiently private to support Article III standing); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (explaining that "[a] right to privacy encompasses the individual's control of information concerning his or her person," and that tracking an individual's "likes, dislikes, interests, and habits over a significant amount of time" harms that individual's right to control their personal information (cleaned up)); *Moser v. Health Ins. Innovations*, No. 17-cv-1127-WQH(KSC), 2019 WL 2271804, at *12 (S.D. Cal. May 28, 2019) (noting that "there are significant privacy concerns with requiring an individual to broadly produce or disclose 'browsing history'" (citing *Riley v. California*, 573 U.S. 373, 395–96 (2014))).

Based on the factual allegations in the FAC, the Court finds sufficient support to show a concrete injury.  As such, the Court **DENIES** Defendant's Motion on this theory.  At this stage in the pleadings, the FAC survives a Rule 12(b)(1) motion for her claim for damages.  However, the Court notes that the FAC seeks both damages and injunctive relief.  Thus, Plaintiff must show a concrete injury *and* a likelihood that she will be similarly injured again.  *See San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).

Although Plaintiff's claim for damages is viable based on the facts in the FAC, Plaintiff specifically notes that she "would likely browse the Website again in the future, but will not do so until then."  [FAC ¶ 88].  Such self-determined decision to cease one's exposure to the injury at the heart of this suit would then

suggest she will not face similar injury.  Based on Plaintiff's own concession that she will not browse the website in the future, Plaintiff is unable to show Article III injury for her claims for injunctive relief.  As such, the Court **GRANTS** Defendant's Motion for lack of Article III standing as to Plaintiff's claims for injunctive relief.

### 2.    Standing as a "Tester"

Although Plaintiff's status as a "tester" "casts doubt on any suggestion that she was surprised" by defendant's alleged privacy violations, that fact alone does not preclude her from establishing Article III standing to sue.  *Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023).

On one hand, a plaintiff cannot claim injury when her expectations are ultimately met.  *See Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) (declining to find Article III standing where a tester visited and entered information into a website expecting the information to be accessed, recorded, and disclosed).  Instead, the injury for a plaintiff bringing an invasion of privacy claim "depends on her expectations . . . . And as a tester seeking to file lawsuits for invasions of her privacy, she had no expectation of privacy, and thus, no injury in fact."  *Rodriguez v. Autotrader.com. Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387, at *3 (C.D. Cal. Mar. 14, 2025)

However, there may be injury where a plaintiff is "genuinely interested" in visiting a website and is "unaware of the secret spyware being used to surveil visitors and monetize personal information."  *Rodriguez v. Brushfire Recs.*, No. 2:25-CV-09797-CAS-PDX, 2025 WL 3692144 at *6 (C.D. Cal. Dec. 15, 2025).  Much like the plaintiff in *Brushfire Records*, Plaintiff here was genuinely interested in AEG's website and even opted-out of granting Defendant's website consent to track her information.  [FAC ¶¶ 81–86].  Because she had expectations that Defendant would not collect and transmit her information in accordance with her choice to reject all cookies from the website, Plaintiff's status as a "tester" did not affect her expectations of privacy when using Defendant's website.  The Court **DENIES** Defendant's Motion on this theory.

Consistent with the discussion above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss for lack of Article III standing.

**B.** **Rule 12(b)(6) Motion to Dismiss**

As to the merits of each of Plaintiff's claims, Defendant argues that Plaintiff either fails to allege the requisite elements for these claims or that Plaintiff "consented to the disclosed data practices" and cannot bring her claims. [Motion at 19–20, 23–30]. Defendant further suggests the party-exception applies to exempt itself from any liability. [*Id.* at 22–23].

In response, Plaintiff clarifies that it has plausibly alleged elements of ECPA and CIPA to maintain these causes of action. [Opp. at 28–30]. Plaintiff also disputes whether notice was sufficient to effectuate consent. [Opp. at 26–27].

**1.** **Claim 1: ECPA**

The Electronic Communications Privacy Act of 1986 ("ECPA") provides a civil cause of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used." 18 U.S.C. § 2520.

Plaintiff alleges that Defendant "intentionally intercepted, or procured the interception of, these electronic communications using the cookies or tracking pixel technology, without Plaintiff's knowledge or consent" in violation of 18 U.S.C. § 2511(1)(a). [FAC ¶¶ 91–93]. Plaintiff also contends that Defendants violated § 2511(2)(d) by "facilitat[ing] a third-party's interception—despite promising to protect user privacy— [] with the purpose of enabling commercial exploitation of user data." [*Id.* ¶ 96].

Defendant challenges Plaintiff's ECPA claim for failure to allege that Defendant intercepted the "contents" of her communications through the Website. [Motion at 21]. Similarly, the Motion contends the FAC does not adequately allege facts to meet all of the elements of a CIPA claim. [*Id.* at 13]. In the alternative, Defendant argues that the ECPA's party exemption to liability applies. [*Id.* at 22–23].

Given the dispositive nature of the party exemption, the Court considers whether the party exemption applies.

Under the ECPA, "[i]t shall not be unlawful . . . for a person . . . to intercept a[n] electronic communication where such person is a party to the communication" so long as such interception is not "for the purpose of committing any criminal or tortious act" ("party exemption"). 18 U.S.C. § 2511(2)(d). The statute, however, contains an exemption from liability for a person who is a "party" to the

communication, whether acting under the color of law or not. *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 607 (9th Cir. 2020).

Here, Defendant argues that it was a party to Plaintiff's alleged communications on the Website and that Plaintiff has not invoked the crime-tort exception. [Motion at 22–23]. Plaintiff does not provide a substantive response to this argument, nor expands beyond its conclusory allegation that "[n]o exception under § 2511(2)(d) applies." [FAC ¶ 95].

It is clear from the FAC that Defendant was a party to Plaintiff's Website communications, and Plaintiff does not dispute this contention. [*See* FAC]. Because Defendant was the party that was meant to, and did, receive Plaintiff's communications on the Website, under the party exception, "any alleged interception of the communications is not actionable." *Pena v. GameStop, Inc.*, 670 F.Supp.3d 1112, 1118 (S.D. Cal. 2023).

The issue is then whether Defendant acted with criminal and/or tortious intent under ECPA, such that it would qualify for the exception that renders the party exception inapplicable. Various courts have held that a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording or interception itself. *Pena*, 670 F.Supp.3d at 1119 (citing *In re Google Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 145 (3d Cir. 2015)); *see Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010).

Based on the facts alleged in the FAC, there do not seem to be any tortious or criminal act independent of the collection, interception, and distribution of Plaintiff's data. As such, the crime-tort exception to the party exemption is inapplicable.

Accordingly, the Court finds that the party exemption applies to relieve Defendant of liability from Plaintiff's ECPA claim. The Court **GRANTS** Defendant's Motion as to Claim 1. However, Plaintiff is granted **LEAVE TO AMEND** to cure any deficiencies associated with this claim.

### 2.    Claim 2: CIPA (Violation of Section 638.51)

Section 638.51 of the California Penal Code prohibits the use of pen registers and trap and trace devices, which are "device[s] or process[es]" that record or capture "dialing, routing, addressing, or signaling information" from a "wire or electronic communication," "but not the contents of a communication."

Cal. Penal Code §§ 638.50(b)–(c); 638.51.  To state a claim under § 638.51, a plaintiff must allege that a defendant installed and used a pen register or trap and trace device without first obtaining a court order.  *Id.  See also* § 638.51.  A "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."  § 638.50(b).

According to the FAC, Defendant installed third-party cookies and corresponding software code, which Plaintiff alleges are pen registers, without authorization of a court order to track Plaintiff's IP address and user-agent information—from the electronic communications transmitted by Plaintiff's computer or device.  [FAC ¶ 105].  Defendant does not appear to dispute whether there exists a court order authorizing this conduct.  Instead, the Motion suggests the FAC does not adequately allege violations of § 638.51 because cookies are not considered to be a "pen register."  [Motion at 25].

Defendant argues that because its third-party cookies and software code does not collect and share information of the type contemplated by the statute, Plaintiff's claim fails.  [Motion at 25–26].  Specifically, Defendant endorses a limited interpretation of CIPA, which "covers devices that capture dialing or routing information—not website activity."  [*Id.* at 25].

To determine whether a device is a pen register, "courts must look to the *type of information* being collected."  *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413 at *2 (Cal. Super. Oct. 2, 2024) (emphasis added).  Software that "identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'" constitutes a "pen register."  *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

Taking the facts alleged in the FAC as true, the information collected by these third-party cookies and software code includes computer transmissions regarding Plaintiff's IP address, session information, and geolocation.  [FAC ¶ 22].  Defendant's collection of such information is much like that of the process found as a pen register in *Greenley*.  *See also Doe v. Talkiatry Mngt. Servs., LLC*, 2026 WL 206483 at *4–5 (C.D. Cal. Jan. 22, 2026) (concluding the interception and transmission of location data could support a § 638.51 violation).  At this stage of the proceedings, Plaintiff has plausibly stated a claim under § 638.51.

The Court **DENIES** Defendant's Motion as to Claim 2.

### 3.   Claim 3: Intrusion Upon Seclusion

Claim 3 alleges the common law claim of intrusion upon seclusion.  The elements of invasion of privacy are: (1) a legally protected privacy interest, (2) a reasonable expectation of privacy, and (3) a highly offensive intrusion. *See Hernandez v. Hillsides Inc.*, 47 Cal.4th 272, 287 (2009).  The elements of intrusion upon seclusion are: (1) a defendant "intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," and (2) that the intrusion was "highly offensive" to a reasonable person. *Id.* at 286.

Because the invasion of privacy and intrusion upon seclusion are similar, courts often "consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *See In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 605 (9th Cir. 2020).  The inquiry about the offensiveness of an intrusion involves examining "all of the surrounding circumstances, including the degree and setting of the intrusion and the intruder's motives and objectives." *Hernandez*, 47 Cal. 4th at 295.  "The California Constitution and the common law set a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

The Motion seeks dismissal of Claim 3 because Plaintiff cannot assert a reasonable expectation of privacy nor alleges highly offensive conduct to support this cause of action.  [Motion at 30–31].

### i.   Reasonable Expectation of Privacy

Courts consider a variety of factors in determining whether a reasonable expectation of privacy exists, including the "customs, practices, and circumstances surrounding a defendant's particular activities." *Facebook*, 956 F.3d at 602.  In *Facebook*, plaintiffs alleged plausibly a reasonable expectation of privacy in their browsing data where defendant Facebook collected their browsing data even after they logged out of Facebook, because they had "privacy interests" in their browsing histories and other collected data, and because of the "allegedly surreptitious and unseen data collection." *Id.* at 602–03; *see also id.* at 603 ("[B]oth the nature of collection and the sensitivity of the collected information are important.").

Here, Defendant argues that Plaintiff could not have had an expectation of privacy "based on a single visit to the Website," which she "likely initiated to bring

this suit." [Motion at 30]. However, the Court has previously found that "plaintiffs have a reasonable expectation of privacy where data is collected without their consent." *Lewis v. Magnite, Inc.*, No. 2:25-CV-03448-MWC-SSCX, 2025 WL 3687546 at *8 (C.D. Cal. Dec. 4, 2025).

Although Defendant focuses on the point in time after which Defendant stopped tracking Plaintiff's data upon her choice to reject cookies on the website, this does nothing to address the FAC's allegations as to how the website began to track Plaintiff's data from "the moment that Plaintiff landed on the Website." [FAC ¶ 82].

Put in other words, Defendant's website collected Plaintiff's data from the moment she visited Defendant's website. [FAC ¶ 82]. Even though Plaintiff rejected non-essential cookies to prevent the tracking and transmission of her data, her selection was ineffective because there was a period that the website did collect, track, and transmit her information before she was able to direct it not to. [*Id.* ¶¶ 82–85]. Where Plaintiff rejected non-essential cookies "[c]onsistent with her typical practice in rejecting or otherwise declining the placement of cookies . . . and tracking technologies," Defendant's conduct exceeded what she consented to or expected. [*Id.* ¶ 84].

Ultimately, the information that the FAC alleges that Defendant collected includes Plaintiff's "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data." [FAC ¶ 117]. Accepting all facts alleged in the FAC as true and drawing all reasonable interferences in Plaintiff's favor, the manner of Defendant's data collection and categories of data collected supports Plaintiff's position that she had a reasonable expectation of privacy.

### ii.    Highly Offensive

"Actionable invasions of privacy also must be highly offensive to a reasonable person, and sufficiently serious and unwarranted so as to constitute an 'egregious breach of the social norms." *Facebook*, 956 F.3d at 606 (internal quotations marks and citation omitted). "Determining whether a defendant's actions were highly offensive to a reasonable person requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Id.* (internal quotation marks and citations omitted). "While analysis of a

reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id.* "Whether [ ] conduct was highly offensive can rarely be resolved at the pleading stage." *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022).

A reasonable factfinder could determine the alleged unauthorized collection of Plaintiff's information *prior* to her ability to reject tracking technologies was an unacceptable intrusion in violation of public policy. [FAC ¶ 108]. Because Defendant's actions may constitute a highly offensive intrusion, the FACC raises a question that cannot be resolved on a motion to dismiss as a matter of law. *See Facebook*, 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage.")

Defendant's Motion to Dismiss is **DENIED** as to Claim 3.

## V.    CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss as follows:

- Defendant's Rule 12(b)(1) Motion is **GRANTED** as to the claims for injunctive or prospective relief and **DENIED** as to the other forms of relief.

- Defendant's Rule 12(b)(6) Motion is **GRANTED** as to Claim 1. Plaintiff is granted **LEAVE TO AMEND** to cure any deficiencies associated with Claim 1; and

- Defendant's Rule 12(b)(6) Motion is **DENIED** as to Claims 2 and 3.

Moreover, the Court **GRANTS** Defendant's Request for Judicial Notice.

///

///

///

Plaintiffs are **ORDERED** to file an amended complaint by **May 22, 2026,** as to the surviving claims.  Plaintiffs are also **ORDERED** to email a red-lined version of the amended complaint to SSS_chambers@cacd.uscourts.gov on the date it is filed.  If an amended complaint is filed, Defendants must either file a motion to dismiss or responsive pleading within 14 days after being served with the amended complaint.

**IT IS SO ORDERED.**